Scott N. Sanford, Plaintiff and Respondent, *v.* Duluth & Dakota Elevator Company, Defendant and Appellant.

**Chattel Mortgages—Conversion of Property by Third Party —Demand—Sale by Mortgagor—Review on Appeal.**

1. The plaintiff held a chattel mortgage given by K. upon wheat, and the mortgage was filed in the proper office. After the filing, and while the debt secured by the mortgage was due and unpaid, K. sold and delivered the wheat to the defendant, the elevator company, and the company received the wheat into one of the warehouses located in the county where the wheat was sold and where the mortgage was filed. A warehouse receipt for the wheat was made out in the name of K., and by his direction it was delivered to Bell, the defendant, who claimed the wheat. Defendant cashed the warehouse receipt, and took it from Bell. There was no evidence that the elevator company mixed the wheat with other grain, or sold it, or any part of it. Plaintiff sues for the value of the wheat, and alleges that the defendant had refused to deliver the wheat upon his demand therefor, and had unlawfully converted the wheat. At the trial no demand was shown, and the only evidence of conversion was the sale, delivery, and payment, as above stated. At the close of the testimony the elevator company requested the trial court to direct a verdict in its favor, upon the ground

of failure of proof of demand and refusal before suit, and failure of proof of conversion by the elevator company. The motion was denied, and an exception was saved. *Held* error.

2. The case was given to the jury, but, on the request of the elevator company so to do, the trial court refused to charge the jury respecting the law governing the conversion of property. The court stated as a reason for its refusal that the undisputed testimony showed a conversion of the wheat. Defendant excepted. *Held,* that the refusal was error.

3. Under the provisions of the Civil Code of North Dakota, (Comp. Laws, §§ 4330, 4338, 4346, 4348, 4356, and 4358,) the title to chattels does not pass from a mortgagor upon the execution and delivery of the mortgage, or upon a breach of its conditions; nor does the title pass until a foreclosure has been completed. After default, as well as before, the mortgagor of chattels is the legal and equitable owner thereof, and as such has a vendible interest in the chattels. A purchaser of such chattels, who merely buys, pays for, and takes possession, and does no act which is inimical to the rights of the mortgage holder, is not necessarily a wrong-doer. Such purchaser does not convert the property.

4. An action for the value cannot be maintained in such a case by the mortgagee against the purchaser without a demand and refusal to deliver before suit; no affirmative title being alleged by the purchaser.

5. Section 6933, Comp. Laws, construed, *held,* that a purchaser who has no notice or knowledge that the mortgage is unpaid, or that the mortgagee has not consented to the sale, may assume that, in selling, the mortgagor is not committing a felony. Under such circumstances the title will pass to the purchaser, even if the act was a crime as to the seller.

6. No motion for a new trial was made in the court below, but the rulings complained of were preserved by a bill of exceptions incorporated with the judgment record. On appeal from a judgment this court will review alleged "errors of law occurring at the trial," and properly appearing upon the record, without a motion for a new trial in the court below.

7. Where a trial court improperly refuses to direct a verdict at the close of the testimony, or to give a request in the charge to the jury, such improper refusals constitute "errors of law occurring at the trial." The remedy for such errors by motion for a new trial is not exclusive, but is concurrent with that of appeal from the judgment.

(Opinion Filed March 17, 1891.)

*A* PPEAL from district court, Ransom county. Hon. W. S. LAUDER, Judge.

*A. C. Davis*, for appellant.   *Rourke & Allen* and *Goodwin & Van Pelt*, for respondent.

Action for value of wheat, alleged to have been converted by defendant. Judgment for plaintiff. Reversed and new trial ordered.

The opinion of the court was delivered by

WALLIN, J.   This is an action to recover the value of certain wheat covered by plaintiff's chattel mortgage. The complaint charges in effect that plaintiff is the mortgagee and owner of a chattel mortgage executed by one Carl Kruger and wife, and covering the grain in question; that the mortgage was duly filed in the office of the register of deeds of Ransom county, in which the wheat was raised, and in which all the transactions in question occurred; and also "that, while said mortgage remained in force and unsatisfied, and on or about the 3d day of October, 1889, the defendants wrongfully and unlawfully took possession of the whole of said one hundred and ninety-four bushels of wheat, and wrongfully and unlawfully converted the same to their own use." The complaint further charges, in substance, that the defendants unlawfully detain the wheat in Ransom county, and "that said plaintiff has caused to be demanded of said defendants, of each and both of them, the delivery and possession thereof, before the commencement of this action; but said defendants refused, and still refuse and neglect, to deliver the same, or any part thereof, to the plaintiff." Judgment is demanded for the value of the wheat and interest, but not for a return of the property. After admitting that the defendant is a corporation, the defendant the elevator company answers as follows: "And, further answering, the defendant denies any knowledge or information of the allegations of the complaint (except as above admitted) sufficient to form a belief." At the trial the execution, delivery, and filing of the chattel mortgage were shown, and that the debt secured by it was due and unpaid. The evidence relied upon to show conversion is epitomized as follows: "That on the 3d day of October, 1889, the mortgagors delivered to the defendant the Duluth & Dakota Elevator Co., one hundred and ninety-four

bushels of the wheat described in the mortgage; that said defendant received and took the same into its elevator at Sheldon, N. D., and by its duly authorized agent issued tickets or warehouse receipts therefor in the name of the mortgagor, Carl Kruger; that said defendant, by the direction of said Kruger, delivered said tickets to the defendant Bell, who claimed the wheat represented thereby; that said Bell presented said tickets for payment to E. B. Bruce, the paying agent of said elevator company, and received from him in payment therefor, on October 3 or 4, 1889, the sum of one hundred and thirty-four dollars and twenty cents." There was no competent evidence of actual notice to defendant of the existence of the mortgage, and the agent who received the wheat, and the agent who cashed the wheat tickets, both testified that they knew nothing of the mortgage when the wheat was received and paid for. No demand or refusal to deliver the wheat was shown at the trial, and it is conceded that no demand was ever made upon the elevator company. At the close of the testimony the defendant the elevator company moved the court to direct a verdict in its favor upon the ground that there was no evidence to justify a verdict against such defendant, and specifying the following points: "*First*, there is no evidence to show any conversion by said defendant of the property in question; *second*, there is no evidence of any demand made upon said defendant for the property in question before the commencement of the action." The motion was denied, and said defendent excepted to the ruling. The said defendant then asked the court to submit to the jury the question of the conversion of the property in controversy, and to instruct the jury as to the law upon the subject. The court refused to so instruct the jury, and assigned as a reason for such a refusal that the undisputed testimony showed that the wheat in question was converted by said defendant. Defendant excepted to such ruling. The case was given to the jury, and the verdict and judgment were for the plaintiff. There was a bill of exceptions settled and filed, which was annexed to the judgment roll. The defendant the elevator company without moving for a new trial in the court below, appeals from the judgment. The

only errors assigned in this court which are insisted upon are the following: *First*, the court erred in refusing the motion of the defendant the Duluth & Dakota Elevator Company to direct a verdict in favor of said defendant; *second*, the court erred in refusing to submit to the jury the question of the conversion of the property in question, and in refusing to instruct the jury as to the law upon that subject.

In this court respondent's counsel raise the preliminary question that the court cannot consider either of the errors assigned, for the reason that no motion for a new trial was made in the court below. Counsel say: "The question whether there is sufficient evidence to go to the jury involves a review of that evidence. If the appellant desires a review of the facts, a motion for a new trial in the district court was necessary." This contention is untenable. The errors assigned are clearly such as the statutes classify as "errors of law occurring at the trial," and no question of fact is sought to be reviewed. It is true that such errors may be urged as grounds for a new trial, but that remedy is not exclusive, but, on the contrary, it is well settled that the remedy by motion for a new trial for such errors is concurrent with that of appeal from the judgment. Of course the errors must appear upon the judgment roll, and such errors cannot be made to appear without incorporating a bill with the judgment roll, which was done in this case. Our statutes regulating exceptions and new trials are in the main copied from those of the state of California, and the decisions from that state are decisive upon the point in discussion. Craven v. Dewey, 13 Cal. 42; Walls v. Preston, 25 Cal. 61, 67; Donahue v. Gallavan, 43 Cal. 576; Caldwell v. Parks, 47 Cal. 642; Levy v. Getleson, 27 Cal. 685; Hayne, New Trials and App. p, 311, § 112. In California the practice of directing nonsuits prevails; but such practice, so far as the question we are considering is concerned, is substantially the same as directing a verdict. In both cases the court passes upon the legal sufficiency of the evidence to warrant a judgment. Marshall v. Manufacturing Co., (S. D.) 47 N. W. Rep. 290; Hayne, New Trial & App. p. 284, § 100. Errors of law were reviewed in the late territorial court without a motion for a new trial.

Nichols v. Bruns, (Dak.) 37 N. W. Rep. 753. Section 5094, Comp. Laws, also indicates that a bill of exceptions not used on a motion for a new trial may be used on appeal from a final judgment. Respondent cites Reed v. Bernal, 40 Cal. 628. The case is not in point. It simply holds that the supreme court of California will not examine the evidence to see whether the findings of fact are supported by the evidence without a motion for a new trial. In the case at bar the errors assigned are errors of law. See authorities, supra. When the rulings were made which are assigned as error in this court no findings of fact had been made in the trial court. Darst v. Rush, 14 Cal. 83; Sullivan v. Cary, 17 Cal. 85.

The more serious question arises from the non-demand of the wheat before the action was brought. Respondent's counsel contend that no demand was necessary, first, because, as he claims, the answer, by its general denial, shows that a demand would be unavailing. We cannot so construe the answer. It alleges neither title nor right of adverse possession in the defendant. It simply puts the plaintiff upon his proofs. Plaintiff alleges that the property is covered by his chattel mortgage, and that the defendant has unlawfully converted it, and has refused to deliver it after demand. The issue joined by the answer only puts the plaintiff upon his proof as to the allegations of the complaint. The answer pleads no right in the defendant adverse to the rights of a mortgagee under a chattel mortgage. Nor does the evidence show that the defendant the elevator company has at any time assumed absolute dominion over the property as against plaintiff, or has done any act inimical to the rights of the plaintiff as a mortgagee, unless the purchase is inimical. But counsel argue that no demand was necessary, because, as they claim, the conceded facts show a conversion by the elevator company before suit commenced. It is true that no demand before suit would be necessary if the elevator company had, before suit brought, done any act with respect to the grain inconsistent with plaintiff's rights as a mortgagee. Counsel cite Phillip Best Brewing Co. v. Pillsbury & H. El. Co., 5. Dak. 62, 37 N. W. Rep. 763, and Nichols v. Barnes, 3 Dak. 148, 14 N. W. Rep. 110. But these cases are not in point, because

in the cases cited the evidence showed affirmatively that the defendants had converted the grain—in one case by selling it, and in both cases by mixing it with their own grain, or with that of other persons, in a common mass. In the case at bar there is no such showing. On the contrary, the evidence tends to show that the grain is in the defendant's elevator, and there is not a *scintilla* of testimony that defendant had mixed it with other grain, sold it, or done any other act adverse to plaintiff's rights as mortgagee. Defendant received the grain into its elevator, issued wheat tickets therefor in the name of the mortgagor, who delivered the wheat, and, on direction of the mortgagor so to do, delivered the tickets to defendant Bell, who claimed the wheat. Defendant also cashed the tickets so issued and delivered. No fraud is alleged or shown. The transaction is a sale of personalty, accompanied by delivery, made by a mortgagor of mortgaged property, before the debt is paid. The mortgage contained the usual covenants, as follows: "If default shall be made in the payment of said sum of money, or the interest thereon at the time said note shall become due, or if any attempt shall be made to dispose of or injure said property, or to remove said property from said county of Ransom, or any part thereof, by the mortgagors, or any other person, or if said mortgagors do not take proper care of said property, or if said mortgagee shall at any time deem himself insecure, then, thereupon and thereafter it shall be lawful, and the said mortgagors hereby authorize said mortgagee, his executors, administrators, or assigns, or attorney, or authorized agent, to take said property wherever the same may be found, and hold or sell and dispose of the same," etc. The mortgage further stipulates that "that the said mortgagors hereby waive demand and personal notice of the time and place of sale; and, as long as the conditions of this mortgage are fulfilled, the said mortgagors to remain in the peaceable possession of said property." It is conceded that the debt was due and unpaid when the grain was put in the elevator; also that such fact, as well as the act of disposing of the grain, would operate to authorize the mortgagee to proceed to take possession and foreclose the mortgage in accordance with the law. Appellant contends that the mortgagee

has not proceeded to foreclose in accordance with the law. No opportunity was given to the elevator company to deliver up the wheat to the plaintiff. There was no refusal to deliver the wheat, and no demand before suit commenced.

Counsel claims in his brief that "appellant was entitled, before being subject to the costs of an action, to a reasonable time in which to investigate the right of the mortgagee to the possession of the property. This right was not accorded to it." To decide the question presented it becomes necessary to determine whether a purchaser who buys chattels without actual notice, but with constructive notice of the existence of a chattel mortgage upon them, is, in making such purchase and taking possession of the property, an intentional wrong-doer. Authorities are much divided upon the question of whether a vendee who takes possession from a bailee who had no authority to sell may plead a non-demand in a suit for conversion. The states of New York, Pennsylvania, Connecticut, Indiana, and some others, hold that, where the purchase is *bona fide*, a demand before suit is essential. See authorities collated in Bigelow, Lead. Cas. Torts, pp. 446, 447. It has been held in Massachusetts that a mere purchase and taking possession *bona fide* from one without authority to sell, where there is no further act of dominion, does not itself constitute a conversion. This, we think, is the more equitable rule. Gilmore v. Newton, 9 Allen, 171. See Kellogg v. Olson, 34 Minn. 103, 24 N. W. Rep. 364. In this case the purchaser is chargeable with constructive notice of the existence of the mortgage, and we think that no demand would be necessary if the purchase was illegal as to the purchaser; but the question is whether the elevator company, in buying and taking possession of this wheat, and doing no more, was a wrong-doer. The answer to this inquiry turns upon whether a mortgagor of chattels, after default, the mortgage having been filed, has a vendible interest in the mortgaged property. If the mortgagor has such interest, it follows that a purchaser from him is not a wrong-doer, and that the mere fact of purchase and taking possession would not work a conversion. At common law the mortgage "vests the title to the chattel in the mortgagee; not an absolute title, indeed, but

a present title, defensible upon a condition subsequent." Jones, Chat. Mortg. § 426. Having the title the mortgagee may "take the goods into his own custody, or maintain trespass or trover for them against any one who takes or converts them to his own use. See, also, section 699, Id. The common-law rule that title passes obtains in Minnesota and New York and in many of the states. Gates v. Smith, 2 Gil. 21; Mann v. Flower, 25 Minn. 500. A mere refusal by a mortgagor or his vendee to allow the mortgagee to take possession would be a conversion. Fletcher v. Neudeck, 30 Minn. 125, 14 N. W. Rep. 513; Galen v. Brown, 22 N. Y. 37. But the Civil Code of North Dakota has made radical changes in the nature of chattel mortgages, and in consequence of such changes the rights of both parties to a chattel mortgage, as well as the rights of the public with respect to property covered by such mortgages, have been greatly modified. See §§ 4330, 4338, 4346, 4348, 4356, and 4358, Comp. Laws. Under these provisions of the statute it is apparent that the title, both legal and equitable, as well as the right of possession, remains in the mortgagor. Nor is his title divested by a default, or by any breach of the conditions of the mortgage. · The title does not pass from the mortgagor under the Code until the foreclosure is completed. Id. § 4338. But it usually happens, as in this case, that the parties insert a stipulation in the mortgage authorizing the mortgagee, upon default, or upon condition broken, to take the property into his possession. Appellant concedes that the mortgagee in the case at bar had the right, before suit commenced, to take the property into his possession, and to foreclose, but insists that the elevator company bought the vendible interest of the mortgagee in good faith, and without actual notice of the existence of the mortgage, and that it had assumed no dominion over the property hostile to the rights of the mortgagee, and consequently was entitled to a demand before being mulcted by costs of suit.

We are of the opinion that appellant's contention is sound upon principle, and therefore hold that a demand was essential before suit. After condition broken, as well as before, the mortgagor was the absolute legal and equitable owner of the

wheat in question, and as such owner had a vendible interest which he could sell and deliver to a vende, subject, of course, to the lien of the mortgage. We do not place the decision, however, upon the ground that the elevator company had no actual notice of the existence of the mortgage. We are unable to see why the purchase would have been wrongful, even with actual notice of the existence of the mortgage. There was constructive notice, resulting from filing the mortgage, of the fact of the existence of the mortgage, and of the stipulations contained in it. The purchase, after filing in the proper office, was made subject to the lien, whether there was or was not actual notice. We place the ruling upon the general principle that the owner of personal property has a right to sell and deliver it, and that the purchaser takes a good title, subject to any lien thereon. Jones, Chat. Mortg. § 455. The sale and delivery alone not constituting a conversion of the property, it becomes necessary, in order to show conversion, that a demand and refusal to deliver should be shown. Cadwell v. Pray, 41 Mich. 307, 2 N. W. Rep. 52; Kohl v. Lynn, 34 Mich. 360. In Michigan, as in this state, a mortgage of chattels does not transfer title. Jones. Chat. Mortg. § 427; Randall v. Higbee, 37 Mich. 40; People v. Bristol, 35 Mich. 28; Campbell v. Quackenbush, 33 Mich. 287. See, also, Adams v. Wood, 51 Mich. 411, 16 N. W. Rep. 786. We do not overlook the fact that under the Penal Code (§ 6933, Comp. Laws,) it is felony in the mortgagor, "while the mortgage remains in force and unsatisfied," to "sell" the mortgaged property "without the written consent of the then holder of such mortgage." This statute, however, does not make it penal in the purchaser who . buys mortgaged property; much less does it declare that the buyer obtains no title by such purchase. On the contrary, the very phraseology of the act carries the implication that such property might be sold and bought whenever the mortgage ceases "to be in force," or with the consent of the holder of the mortgage. In this case there is no evidence that defendant knew when it received the wheat that the mortgage was unpaid, and "remained in force," or knew that the holder of the mortgage had not given his consent to the sale. Nor do the terms of the mortgage convey any such information to the public. In

the absence of notice or knowledge of the criminal nature of the act of selling, any purchaser would be justified in proceeding upon the assumption that the mortgagor, in offering to sell and selling the property, was not in the act of committing a felony. Should a case arise where it appears that a purchaser buying mortgaged chattels knew and had actual knowledge at the time of his purchase that the mortgagor had no legal right to sell, and that the sale was, as to the mortgagor, a criminal act, a different question might be presented. In the supposed case it might become necessary to determine what effect such actual knowledge of the mortgagor's crime would have upon the question of demand as prerequisite to a suit by the mortgagee for the possession or the value of the chattels; but, as we have seen, no such question arises upon this record.

The question has frequently arisen in the courts whether a statute which makes a specific act criminal in the party who performs the forbidden act operates as a total prohibition of the act. It is now settled as a general rule that the act so impliedly prohibited will be treated as *prima facie* unlawful, and void as against the party who is subjected to the penalty. A statute in Minnesota made it penal to sell lots in a town plat before the plat was recorded. A lot was sold, and notes taken for the purchase money before the plat describing the lot was recorded. An action was brought upon the notes, and the maker sought to defend upon the ground that the act of selling was penal in the seller. After stating the general rule governing such cases substantially as above stated, the court says: " The imposing of a penalty does not necessarily give rise to an implication of an intention that, where an act is done which subjects a party to a penalty, the act itself should be void, and of no legal effect; and if it seems more probable from the subject and terms of the enactment, and from the consequences which will be anticipated, as likely to result from giving such an effect to the penal law that it was not the intention of the legislature to make the transaction void, but only to punish the offending party in the manner specified, the law should be so construed. Harris v. Runnels. 12 How. 79: Pangborn v. Westlake, 36 Iowa 546; Middleton v. Arnolds, 13 Grat. 489; Niemeyer v. Wright,

75 Va. 239. The only provision in this statute from which it can be inferred that the contracts for the sale or leasing of platted lands were intended to be prohibited, and avoided if made, is that which subjects the vendor or lessor, who has not first complied with the requirements of the law, to a pecuniary penalty. If the purpose of the section was also to prevent such sales and contracts by making them illegal, a purchaser having such knowledge of the facts, as any reasonable prudent purchaser would acquire, violates the law, and is as much in the wrong as the vendor. The fact that no penalty, forfeiture or disability is declared with respect to the purchaser under any circumstances, is worthy of being considered in this connection. The act is wholly consistent with a theory that, as a means of securing the observation of the prescribed requirements of platting and recording, only the specified penalty should be imposed as a consequence of the disregard of the law. It is in the power of the proprietor platting his lands to comply with the requirements of the law. Another person, a purchaser of a portion of the land, cannot do this. A specific penalty is declared for the omission of the former. The statute is silent as to the consequences of the latter." De Mers v. Daniels, 39 Minn. 158, 39 N. W. Rep. 98. The court, in Pangborn v. Westlake, 36 Iowa, 546, holds to the same views, and cites many authorities. See, also opinion of supreme court of the late territory in Territory v. Shearer, 2 Dak. 332; 8 N. W. Rep., bottom page 135. Applying the rules of construction laid down in the cases cited, we find no difficulty in reaching the conclusion, and so hold, that the penal law of this state, which, under certain circumstances, makes it criminal in the mortgagor to sell mortgaged chattels, but does not punish the buyer, was not intended to annul such sales, nor prevent the title from passing to the purchaser when such sales are made. If the title passes to the purchaser, (and we hold that it does,) the purchaser cannot be a wrong-doer in a case where there is no evidence that the purchaser knew that the sale was a crime in the seller. We do not decide what the rule would be in a case where the purchaser consciously and intentionally aided the mortgagor in committing the forbidden act. No such case is before us. The evi-

dence negatives such knowledge. In the case at bar nothing appears that can stand in the way of holding that the purchaser in buying this wheat lawfully acquired the title to the same, subject to the lien of the mortgage thereon. An action will not lie against such a purchaser without a demand and refusal before suit, except where there has been a conversion of the property, or where a claim of title adverse to the mortgagee's right of possession has been pleaded by the defendant. We hold that the trial court erred in refusing to direct a verdict for defendant, and in refusing to charge the jury upon the law governing the conversion of chattels. For these errors the judgment will be reversed, and a new trial granted. All concur.