(88 N. W. Rep. 703.)

---

MARY NESS *vs.* EVAN M. JONES.

Opinion filed Nov. 8, 1901.

**Exemptions.**

Sections 5516, 3605, and 3625 of the Revised Codes of 1899, and § 208 of the state constitution, relating to exemptions, considered and construed.

**Head of Family.**

*Held,* that the husband, and not the wife, is primarily the head of the family, and that, as a result merely of the conjugal relation, a wife, who is a debtor, does not occupy the relation of head of the family for the purpose of claiming exemptions of personal property from seizure and sale by legal process.

**Exemption Claim When Made by Wife.**

*Held,* further, that under certain conditions, when shown to exist from necessity, the wife may be compelled to accept the burden of maintaining the family, and in such exceptional conditions the law concedes to her the family headship for the purpose of claiming exemptions.

**Insolvency of Husband—Head of Family.**

In the case at bar the family of the plaintiff consisted of herself, her husband, and eight children. The family resided upon land owned by the plaintiff, which was operated as a farm, and consisted of one quarter section of land. In 1895 the husband engaged in the machinery business in connection with certain farming operations upon lands owned by him separately. The husband failed in business, lost all of his property, and became a bankrupt. During all the time in which the husband was prosecuting said outside business the wife carried on the home farm and supplied the necessaries for the support of the family, and did this with only slight assistance from her husband in the way of advice and the performance of some little work about the home. The property in question consists of grain raised by the wife on the home farm, which the plaintiff, the wife, claims as exempt from seizure to satisfy a judgment against her and her husband. At all

times the husband and wife have lived together as such on the home premises, and the evidence shows that the husband is not disabled, mentally or physically; nor is there any suggestion in the evidence that the husband is, or ever was, unwilling to labor for the support of his family. *Held*, under such conditions, that the husband was the head of the family, within the meaning of the exemption law as to personal property, and that the wife, under the conditions shown by the evidence, was not the head of the family for such purposes.

Appeal from District Court, Richland County; *Glaspell,* J.

Action by Mary Ness against Evan M. Jones. Judgment for defendant, and plaintiff appeals. Affirmed.

*W. E. Purcell* and *C. L. Bradley,* for appellant.

*H. C. Preston* and *McCumber, Bogart & Forbes,* for respondent.

WALLIN, C. J. This action was brought to recover the possession of personal property of the admitted value of $850, which the defendant, as sheriff, seized on an execution issued upon a judgment against the plaintiff and her husband as joint debtors. The plaintiff, before instituting suit, demanded the property from the sheriff as exempt property. At the close of the trial the court directed a verdict for the defendant, and upon the return of such verdict judgment was entered in favor of the defendant. A statement of the case was settle in the court below, but no motion to vacate the verdict or for a new trial was made in the trial court.

Counsel for appellant have assigned numerous errors upon the record, the last and most important of which is as follows: "The court erred in granting the motion to direct a verdict for the defendant." At the threshold of the case we are met by an objection urged by counsel for the respondent to any consideration of this assignment of error. As a basis for the objection counsel assume that the assignment requires the consideration of questions of fact, and upon this assumption counsel claim that this court cannot lawfully proceed to review the so-called questions of fact, for the reason that the appellant has ommitted to move for a new trial in the district court. In support of this objection counsel for repondent have cited numerous cases from other states, none of which, in our judgment are in point. The objection is untenable in this jurisdiction. The trouble with it lies in the assumption that the assignment of error involves a review of questions of fact. The assignment has reference to a ruling of the trial court made during the trial of the action, and, if such ruling was erroneous, it was an "error of law occurring at the trial," and would fall under subdivision 7 of § 5472, relating to new trials. Such rulings were classed as "errors of law" in the supreme court of the territory of Dakota, in which the rule in California was followed, and such has been the unvarying practice in this state. See *De Lendrecie* v. *Peck,* 1 N. D. 422, 424, 48 N. W. Rep. 342; *Slattery* v. *Donnelly,* 1 N. D. 266, 47 N. W. Rep. 375; *Henry* v. *Maher,* 6 N. D. 413, 414, 71 N. W. Rep. 127; Hayne, New Trial & App. § § 112, 114.

But this rule of practice, which was a mooted one in the courts, was conclusively settled by the enactment of a statute now embraced in § 5627, Rev. Codes 1899. That section after providing that, in actions tried to the court, questions of fact may be reviewed in this court, whether a motion for a new trial was or was not made in the action, proceeds in the last part of the section to prohibit a trial of questions of fact in this court in jury cases, unless a motion for a new trial is first made in the district court. This section, construed with others relating to new trials, leaves it optional with the moving party in jury cases to move or not move for a new trial in the district court; but, if the motion is not made below, no review of questions of fact can be had in the supreme court. The precise question presented by this objection of counsel was passed upon and ruled adversely to the views of the respondent's counsel in *Sanford* v. *Elevator Co., 2* N. D. 6, 10, 48 N. W. Rep. 434, 435. It follows upon these authorities that this court cannot review questions of fact in this case, because the plaintiff has not seen proper to move for a new trial. But respondent's counsel insist that the assignment of error based upon the order directing a verdict necessarily involves questions of fact. In this counsel is in error. The motion for a directed verdict called only for a decision upon a question of law. In deciding such motion, the court was not required to reach a definite conclusion as to any ultimate fact at issue. It was called upon merely to determine whether there was competent evidence in the case reasonably tending to establish the material facts in issue. In this case the court held that there was a failure of proof on plaintiff's part as to material facts, and, so holding, ruled as a matter of law that there were no facts to be submitted to the jury. This ruling was a ruling upon a question of law, and none the less so for the reason that it was necessary for the court to consider and examine the evidence in reaching a conclusion upon such question. See authorities above cited.

This brings us to a consideration of the merits of the assignment of error based upon the order directing a verdict for the defendant. This order of the trial court was granted upon a motion therefor made by the defendant's counsel, and in their brief filed in this court defendant's counsel concede that for the purposes of such motion it must be assumed that the evidence in the case was sufficient to establish all the material facts alleged in the complaint, excepting only the facts necessary to be established in order to place the plaintiff in a position to claim the benefits of the statute regulating exemptions of personal property; but as to this feature the contention of respondent's counsel is that the testimony wholly failed. The trial court was of the opinion that the plaintiff had failed upon this feature of the case, and the presiding judge stated in effect, in directing a verdict, that § 3625 limited the exemption to the head of a family, and that the statute provides that the husband is the head of the family, and that in this case

the evidence failed to show that the headship of the Ness family had from necessity ceased to be in the husband and had become vested in the wife. Is this view of the matter sound? · The order of the district court directing a verdict presupposes that a married woman is not primarily, and as a necessary result of her marital relation, the "head of a family," and as such entitled unconditionally to the benefits of the exemption law as to personal property. The trial court, it seems, assumed that under certain exceptional conditions, which may be shown to exist, a married woman, may become entitled to such benefits, and, finally, the court below assumed that in the case at bar the plaintiff has wholly failed to show by testimony that her husband is not, and that she is, the head of the Ness family. .

The legal problem presented for solution is one of no little difficulty, and we have reached our conclusions with some degree of doubt. Our chief difficulty arises upon the construction placed upon the language of said section 3625, supra, and this is occasioned by the very brief and meager language employed by the legislature in subdivision 1 of that section. This section is an innovation, in so far as it declares that the wife, when a claimant, is included within the meaning of the phrase "head of a family," and the last part of the subdivision, which declares that "in no case are husband and wife entitled each to a homestead," is obscure, in this: that such limitation upon the rights of married persons is by its terms confined to the family homestead, and means, of course, that in no case shall one family have more than one homestead which is exempt from seizure and sale on legal process. But no terms used in said subdivision warrant the conclusion that the legislature intended to limit the right of married persons to one, and only one, statutory exemption of personal property. If that was the legislative purpose, it must follow as a result of a construction of all the law bearing upon the subject-matter of exemptions. Nor is the uncertainty in any degree removed by anything found · in section 5516, which goes no further than to declare that personal property to an amount specified shall be exempt "to the head of a family as defined by chapter 39," which chapter relates to homesteads, in which is found section 3625, wherein, as has been said, a wife is included within the meaning of the phrase "head of a family." It must be conceded that the language of the section last cited, when considered by itself, gives no preference to either the husband or the wife, and that it declares that the wife, as well as the husband, is included in the phrase "head of a family."

But the practical difficulties of giving the language of subdivision 1 of section 3625 a literal construction are obvious. The statute is entirely silent upon the question of whether, in a case such as this, where both husband and wife are debtors, and claimants, one or both are entitled to an exemption and, if both, whether the total exemption is limited to the maximum of property or

value specified in the statute, and, if so limited, whether each may claim just one-half of the maximum, or whether the right of exemption, as to each claimant, may be otherwise adjusted as between husband and wife. No attempt was made by the legislature to make provision for the adjustment of any of the differences which would be precipitated in the event of a claim of exemption being made by both husband and wife in the same case. Such practical difficulties as those mentioned, with others which might be suggested, when considered in connection with the general scope and policy of the exemption laws of this state, as the same are revealed alike in the exemption statutes and in the mandate contained in section 208 of the state constitution, have forced this court to the conclusion that section 3625 must be interpreted in connection with all cognate law upon the subject of exemptions, and that, when so interpreted, it means that a wife may claim exemptions only in those exceptional circumstances in which the husband has been constructively deposed from his primary headship of the family and the wife has been invested therewith. The head of a family is, and must remain, a unit. The term "head" implies a singular number, and never, in any connection found in these statutes does it imply the plural number. Our conclusion is that a wife cannot, under section 3625, base a claim for exemptions upon the mere fact of her marital relation. She may, however, for the benefit of the family, claim exemptions when certain conditions are shown to exist which operate to cast upon her the rights and the responsibilities which appertain to the headship of a family. The distinctive purpose of our exemption laws, whether pertaining to the homestead or to personal property, is to afford to debtors (who are heads of families, and to none others) certain immunities which are intended to secure to the families of debtors the necessaries and comforts of life. To the mere debtor, not the head of a family, has not been accorded any of the immunities found in these humane provisions of the laws of the state. The exemption is made for the benefit of families, but nowhere in the law can be found a suggestion that any family is entitled under the exemption laws to claim or receive double immunity, and yet such would be the result in a case like this, if both husband and wife have a full legal right, each in his own behalf, to claim the maximum exemption.

In the case at bar the husband, a joint debtor, has asserted a claim for exemptions, and the sheriff has acquiesced in such claim and turned over to the husband the property claimed by him as exempt from execution, and the whole thereof. With reference to this fact counsel for the plaintiff calls our attention to the fact that the aggregate amount, as claimed, respectively, by the husband and his wife,—the plaintiff,—is less than the maximum amount of personal property allowed by the statute for the benefit of a family, and as to this counsel say that it is inharmony with the legislative

purpose, and that the plaintiff, therefore, is not seeking to get a double allowance of property for her family. But this contention, from our point of view, clearly overlooks two considerations. It ignores the fact that the statute gives exemptions only to one person, viz., the head of the family, and also ignores the fact that nowhere in the statue is there found a restriction which will prevent a party who is entitled to the statutory exemption from receiving the full maximum of personal property allowed by the statute. The statute itself not containing any such restrictions upon this valuable right, the court would hardly venture to read into the statute a limitation upon the right, and, if it attempted to do so, we know of no rule which would measure the respective rights of husband and wife, as between themselves, where each sought the full benefit of the exemption right in the same case.

Our conclusion that the husband is primarily the head of the family rests not alone upon the laws of nature, nor upon the sanctions of the common law. It is in this state further reinforced by express statutory enactments. Section 2764 of the revision of 1899 reads: "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto." Section 2765 declares: "The husband must support himself and his wife out of his property or by his labor. The wife must support the husband, when he has not deserted her, out of her separate property, when he has no separate property and he is unable from any infirmity to support himself."

The remaining questions for determination presented by the assignment of error under discussion relate to the evidence and are relatively of little difficulty. It is quite clear from this record that plaintiff's counsel deemed it necessary to show by testimony at the trial that the plaintiff, by reason of certain facts and conditions, had, from necessity, been placed in the relation of headship to her family; and a mass of evidence was put in by plaintiff for this express purpose, and the same is practically undisputed. Our duty is to consider this evidence, but to do so only so far as is necessary to decide whether there is any competent evidence in the record reasonable tending to sustain all the material facts necessary to sustain the cause of action alleged in the complaint. As already seen, the only fact which is not conceded to have been established is whether the plaintiff, at the time she demanded the property in dispute, was the head of her family. The trial court held that this vital fact had not been shown, and this court has reached the same conclusion. In doing so, we have put the most favorable construction upon the evidence offered upon this branch of the case. The facts shown by the evidence may be briefly stated as follows: Plaintiff and her husband have a family of eight children, all minors, save one. The family have resided many years upon a farm owned by the plaintiff, and the property in question consists of grain raised on the plaintiff's homestead. In

the year 1895 the plaintiff's husband embarked in the machinery business at a place about four miles distant from the home farm, and for some time carried on that business in connection with his farming business, which latter was carried on by the husband upon lands owned by him in the vicinity of the home farm. At all times since their marraige the plaintiff and her husband have lived together as husband and wife, and there is no suggestion in the record that the conjugal relation has not at all times been entirely harmonious. The husband is a hard-working and able-bodied man, and nothing in the record indicates a want of ability in the husband, either physical or mental, to care for and maintain his family, or to provide them with the ordinary and necessary comforts of life. So far as the husband's health and strength are concerned, the evidence indicates ability on his part to discharge the duties incident to the headship of a family; nor does the evidence warrant the conclusion that the husband is not entirely willing to discharge such duties to the extent of his ability. But the evidence shows, further, that while the husband was carrying on his said machinery and farming business he left the matter of caring for the home and the children largely to his wife. She supervised the home farm, and attended to the wants of the children, purchased their clothing, and looked after their schooling. She did this, too, from resources drawn from the home farm, and with little substantial aid from the husband, except in the way of advice and some slight assistance about the home. The business of the husband resulted disastrously, and he was driven into bankruptcy, losing all his property.

Just here counsel contend that the husband, because of his financial straits, lost his original position of head of the Ness family, and for the same reason the plaintiff emerged from the background and appeared as the head of the family. We think this position is untenable. It would seem that, if a debtor ever needs the benefit of exemption laws, it is when he is in the greatest financial distress. If he has nothng save his hands with which to support his family, he should at least be permitted to hope that his first small acquisitions of property (acquired by manual labor) would not be seized to satisfy the demands of his creditors. Such property would be subject to seizure unless the husband claimed them as exempt; and he could not maintain his claim if he had ceased to be the head of a family, by reason of financial reverses or for any other reason. The law as we construe it will tolerate but one head and one exemption for one family. If a policy more liberal than this is desirable, it can be inaugurated only by the legislative branch of the government. It is not the province of the courts to create exemptions in cases where the lawmaker has withheld them. Nevertheless it is a fact of common experience, and one which is only too familiar, that conditions sometimes exist in which the wife from dire necessity is compelled to assume the burdens and responsibilities which

belong to the headship of a family; and, where such conditions arise, from necessity the courts, to aid the family of the debtor, have intervened and conferred upon the wife, in lieu of the hsband, the immunities afforded by the exemption laws. The authorities cited below afford illustrations of this doctrine of the courts. See *Linander* v. *Longstaff*, 7 S. D. 157, 63 N. W. Rep. 775; *Scholler* v. *Kurtz*, (Neb.) 41 N. W. Rep. 642; *State* v. *Houck*, (Neb.) 49 N. W. Rep. 462; *Ecker* v. *Lidskog*, (S. D.) 81 N. W. Rep. 905, 48 L. R. A. 155; *Van Doran* v. *Marden*, 48 Iowa, 186. In the last case cited the court say: "When, however, marriage relation does exist, the headship of the family cannot depend upon circumstances of property held by the parties. If this were so, the question involving the headship of the family would be one of fact and never of law. That it is a question of law, when the husband is resting under no disability, we think cannot be doubted." In none of the cases cited does the fact that the husband is a bankrupt and possesses no property figure as a factor in deciding the question whether he or his wife, who is residing with him, is the head of the family to which both belong. In the case at bar there is no evidence tending to show that the husband has deserted his family, or that he is either unable or unwilling to provide necessaries for his family, sufficient for their support, by the labor of his own hands. Nor does the fact that for a time the wife, out of the homestead and its products, aided only by her husband's advice, supplied the wants of the family, at all tend to show that the wife is entitled to the benefits of the exemption law.

We find no error in the judgment, and hence the same will be affirmed. All the judges concurring.