Delores **FRIEDT**, Plaintiff and Appellee,

v.

James **MOSEANKO** d/b/a Prairie Hills Dairy, Defendant and Appellant,

v.

**SCHULTZ CREAMERY**, Garnishee,

v.

Deborah **MOSEANKO** and Sam Zarek, Third–Party Defendants,

**Farmers Home Administration,** Third–Party Defendant.

Civ. No. 920058.

Supreme Court of North Dakota.

March 24, 1993.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee; argued by Lolita Romanick.

Clare R. Hochhalter (appeared), Asst. U.S. Atty., United States Attorney's Office, Bismarck, for third-party defendant.

James Moseanko (argued), Butte, pro se, for defendant and appellant. Appearance by Deborah Moseanko.

MESCHKE, Justice.

James Moseanko appeals from the garnishment and execution seizure of the proceeds from the sale of milk to a creamery, and from orders denying his claims that the milk funds were exempt from seizure as "earnings" or "crops." We affirm.

Delores Friedt sued James Moseanko in 1988 to collect a promissory note. "After Moseanko had three times failed to appear for depositions scheduled by Friedt," the trial court granted default judgment to Friedt under NDRCivP 37 as a discovery sanction. *Friedt v. Moseanko*, 459 N.W.2d 240, 241 (N.D.1990) (*Moseanko I*). We explained:

> Moseanko repeatedly failed to attend properly noticed depositions, without timely prior objection, notification, or justification, even after being ordered by the district court to attend any subsequent deposition for which he was properly served with notice. Moseanko provided tardy "responses" to the notices to take his oral deposition and failed to seek any protective orders in advance of his failure to appear for any of the three scheduled depositions. Under these circumstances, we are unable to conclude that the district court acted arbitrarily, unreasonably, or unconscionably in ordering default judgment against Moseanko as a sanction for Moseanko's abuse of the discovery process.

*Moseanko I* at 242. After we affirmed, Friedt garnished the proceeds of milk production that the Moseankos sold to Schultz Creamery.

Over resistance by James Moseanko and Deborah, his spouse, the trial court ordered the garnished funds applied on Friedt's judgment. In *Friedt v. Moseanko*, 484 N.W.2d 861 (N.D.1992) (*Moseanko II*), we affirmed that order.

Meanwhile, Friedt served two more garnishee summons on Cass Clay Creamery on July 26, 1991 and September 13, 1991, and on James on August 6, 1991 and September 20, 1991. Farmers Home Administration (FmHA) appeared and asserted a secured interest in proceeds of milk seized by those garnishments. Cass Clay deposited the garnished funds with the trial court. The trial court ordered the milk funds held in an interest-bearing bank account at First American Bank Minot pending this litigation.

James moved to dismiss "this action ... based on fraud, deception and the outright theft of property," still disputing that he owed the promissory note to Friedt, demanding payment of half of the milk funds to Deborah, and claiming that his half of the milk funds were exempt "earnings." After a hearing, the court ruled that the garnished milk funds were not protected by restrictions on garnishment of "earnings" in NDCC 32–09.1–03 and 15 U.S.C. § 1673, that FmHA held a security interest in half of the proceeds, and that Friedt had properly garnished the other half of the milk funds. The trial court denied the motion to dismiss, rejected the other claims by James and Deborah, and ordered entry of a Judgment of Garnishment.

After the Judgment of Garnishment was entered on February 19, 1992, Friedt caused the clerk of court to issue a writ of execution, had the sheriff serve a notice of execution levy on James on February 21, 1992, and levied on the milk funds deposited in First American Bank Minot. The sheriff's notice of levy to James included a notice for claiming exemptions:

Any claim or demand you may have for exemption against said levy must be made by you within ten days from the service of this notice.

However, on March 2, 1992, the sheriff's office wrote James to nullify the notice for claiming exemptions:

In the notification, you will notice that it directs you to file any claims of exemptions within ten days of receipt of the notice. It has been brought to my attention the Judgment of Garnishment issued on February 13, 1992 nullifies any exemptions to be claimed in this matter.

Also on March 2, 1992, James simultaneously filed an affidavit "for Claim of Exemptions" and a notice of appeal from the Judgment of Garnishment. His affidavit sought to exempt the homestead and other items, described as absolute exemptions "to a value of $25,000.00 [sic]", under NDCC 28–22–02, including "crops and grain grown on 160 acres," and "[d]isposable earnings ... to 75% or 40 times the federal minimum hourly wage per week WHICHEVER IS GREATER, pursuant to NDCC § 32–09.1–03." James's affidavit also claimed, "All specific partnership property of Deborah Moseanko, 100% of [her] interest, including at least 50% interest in 'any and all money' ... as absolutely exempt as to [the] writ of execution named against only James Moseanko/First American Bank Minot, pursuant to NDCC § 45–08–02 [nature of a partner's right in specific partnership property]."

On March 6, 1992, the sheriff collected the seized funds from First American Bank Minot. After deducting itemized costs, the sheriff paid $8,191 to the U.S. Attorney's office for FmHA and another $8,191 to Friedt on her judgment.

During the appeal, upon Friedt's motion opposed by James, we remanded to the trial court "for the limited purpose of consideration of [James's] Claims for Exemptions and [Friedt's] Motion to Dismiss Claims for Exemptions." After a hearing on June 1, 1992, the trial court rejected James's claims for exemptions "because they were untimely and insufficient."

In this *Moseanko III* appeal, James appears without the aid of an attorney, and makes a hodgepodge of arguments. James

again attacks Friedt's judgment that we affirmed in *Moseanko I* and refused to vacate in *Moseanko II.* James renews arguments that the trial court lacked venue and jurisdiction to enter that judgment for Friedt; makes a new argument that a "non-intervention clause" in the will of the deceased payee of the note precluded court action to enforce the debt; and urges that, because Friedt lives in Washington and James lives in North Dakota, "diversity of citizenship" deprived North Dakota courts of jurisdiction to enforce the debt. We reject these meritless arguments.

■ Absent clear fraud or another timely cause under NDRCivP 60(b), we cannot reconsider Friedt's final judgment against James at this late date. A deeply embedded finality principle does not permit this court to do so.

> In resolving legal controversies the public interest demands that, at some point, there be an end to litigation so that the parties may go about their normal business.... Our rules of procedure, statutes, and other established legal doctrines are all geared toward the final resolution of legal controversies. If the time for appeal may be extended indefinitely, the rights of intervening innocent parties also may be jeopardized. At some point, the public and third parties must be able to rely on the finality of a decision.

*Lang v. Bank of North Dakota,* 377 N.W.2d 575, 579 (N.D.1985) (citations omitted). An eminent jurist explains this principle emphatically:

> [T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case,....

Benjamin N. Cardozo, *The Nature of the Judicial Process, in Selected Writings of Benjamin Nathan Cardozo* 107, 171 (1921). We again refuse to review James's claims of error in the initial judgment.

■ James argues that, because FmHA's security interest in the milk or its proceeds is unperfected, FmHA was not entitled to share in the garnished funds. However, FmHA has held a security inter-

est since January 9, 1986 in "[a]ll livestock now owned or hereafter acquired" by James and Deborah Moseanko, "including proceeds and products thereof." Even though the 1986 public filing of the financing statement lapsed after five years, *see* NDCC 41–09–42(2) (UCC 9–403), the lapse did not rescind FmHA's security in Deborah's share of livestock products. A security agreement remains enforceable between the debtor and the creditor whether or not perfected by the public filing of a financing statement. NDCC 41–09–14 (UCC 9–201) ("Except as otherwise provided by this title a security agreement is effective according to its term between the parties,...."). *See* 69 AmJur2d *Secured Transactions,* § 345 (1973). *See also* NDCC 41–09–27(2) (UCC 9–306) ("Except where this chapter otherwise provides, a security interest continues in collateral notwithstanding sale ... unless the disposition was authorized by the secured party ..., and also continues in any identifiable proceeds including collections received by the debtor."). On the other hand, FMHA's security in James's share lost priority and became subordinate to the lien of Friedt's garnishment because the financing statement had lapsed, and the security interest had become unperfected. NDCC 41–09–22(1)(b) (UCC 9–301). *See also* NDCC 41–09–27(3), (4) (UCC 9–306). This argument about Deborah's share of the milk funds has little merit and is futile.

However, the exemptions claimed by James present new and open questions reviewable on this appeal. James mainly argues that the trial court mistakenly classified his "Milk Farm Products" as nonexempt.

James employs this "farm products" argument in three disconnected ways. First, James argues that, since milk is a farm product, "product earnings ... are not subject to garnishment by statutes intended for wage-earners,...." Alternatively, he argues that "farm products" are "earnings," partially protected from garnishment under NDCC 32–09.1–03, imploring that "[t]he milking of cattle is how the Moseanko Family has earned their liveli-

hood for many years through their hard work." Finally, James argues that milk is a "crop" under NDCC 28–22–02 and is absolutely exempt.

Friedt's principal rejoinder is that James's claim of exemptions was untimely and inadequate. Friedt points out that the exemptions were first claimed five and one-half months after service of the garnishee summons "upon either Cass Clay or Moseanko," and more than the "20 days after service of the garnishee summons" allowed by NDCC 32–09.1–22 for claiming exemptions from a garnishment. Friedt also urges that James's affidavit of exemptions "fails to meet the 'schedule of all personal property' envisioned by N.D.C.C. 32–09.1–22 and 28–22–07."

Furthermore, Friedt argues, the milk funds are not "earnings" in the sense partially exempted from garnishment by NDCC 32–09.1–03, but rather are "any property . . . belonging to the creditor's debtor" that NDCC 32–09.1–02 subjects to garnishment. Friedt does not respond directly to James's argument that milk is an exempt "crop," but argues only that "[g]arnishments may include property such as crops."

▪ James is wrong in his contention that a garnishment can only be used to reach wages due an employee from an employer. Of course, a garnishment "is the exclusive procedure . . . to execute on earnings of a debtor while those earnings are held by a third party employer." NDCC 32–09.1–02. For this purpose, "earnings" is defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise,. . . ." NDCC 32–09.1–01(3). Still, money and personal property other than earnings, held by someone for the judgment debtor, can either be seized directly by execution levy, *see* NDCC 28–21–08, 28–21–14, and 28–21–15, or indirectly by garnishment of "any person . . . indebted to or having any property in possession or under control, belonging to the creditor's debtor. . . ." NDCC 32–09.1–02. Unless the proceeds of milk are earnings or otherwise exempt, Friedt was authorized to

garnish the milk funds at Cass Clay Creamery.

▪ There are formulaic exemptions from garnishment of earnings for debt. NDCC 32–09.1–03; 28–22–18. *See also* 15 U.S.C. § 1673. Briefly stated, the formula allows garnishment of up to twenty-five percent of disposable earnings but only to the extent that those earnings exceed federal minimum hourly wages. NDCC 32–09.1–03. The formula exempts at least the federal-minimum-wage amount for the subsistence of the wage earner and his dependent family. *Id.* "Earnings" is statutorily defined to mean "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise,. . . ." NDCC 32–09.1–01(3). So defined, the term "earnings" does not have the broad dictionary meaning that includes "business profits."

The precedents are largely negative. *See Rice, Seiller, Cantor, Anderson & Bordy v. Fitzgerald,* 824 S.W.2d 435 (Ky. 1992) (dairy farmer's proceeds from sale of milk are not exempt earnings); *Coones v. Federal Deposit Ins. Corp.,* 796 P.2d 803 (Wyo.1990) ("[p]rofits and business earnings are outside the meaning of" earnings, which does not include profits or receipts from crops and livestock); *Thompson v. Holmes,* 174 Misc. 740, 21 N.Y.S.2d 929 (Delaware County Ct. 1940) (moneys due from creamery for milk sold and delivered "are debts and subject to a garnishee execution but . . . do not represent wages, earnings, salary or profits"); *In re French,* 231 F. 255, 269 (N.D.N.Y.1916) (milk proceeds not " 'earnings of the judgment debtor for his personal services' "). *Compare Lingle State Bank of Lingle v. Podolak,* 740 P.2d 392 (Wyo.1987) (earnings of judgment debtor for personal services includes proceeds from sale of wheat crop); *Russell M. Miller Company v. Givan,* 325 P.2d 908 (Utah 1958) (" 'earnings' . . . is generally held to include earnings of any character, either from working for others or from self employment, so long as it actually represents compensation for personal services," and includes profit from buying and selling cars). We follow the trend and conclude

that proceeds from the sale of milk produced by a dairy farmer are not the kind of earnings partially exempted from garnishment.

James also cites 31 AmJur2d *Exemptions* § 230 (1989) as saying that the law exempts milk proceeds from creditors' claims. That text, however, cites a bankruptcy decision based on a specific New York statute that exempted unpaid milk proceeds. *See In re Stinson*, 59 B.R. 914 (Bankr.W.D.N.Y.1986). Since North Dakota does not have such a specific statute, that precedent is inapplicable here.

There is some doubt whether James's claim of absolute exemptions was effective since, as Friedt points out, James's affidavit did not contain the "schedule of all personal property" called for by NDCC 32–09.1–22 and 28–22–07. Still, this requirement would not have applied to the restriction on disposable earnings, since the garnishee's "[d]isclosure must state ... [t]he amount of disposable earnings ... subject to garnishment" separately from "[w]hether the defendant claims any exemption from execution." *See* NDCC 32–09.1–09(1), (4). Moreover, there are strong precedents that a homestead, crops, and other absolute exemptions do not need to be claimed in any particular form because, unless waived by both the husband and wife, they exist for the benefit of the debtor's family, not just the debtor. *See* NDCC 28–22–07 ("Whenever any debtor ... desires to avail himself of the benefit of section 28–22–03 [Additional absolute exemption for head of a family], such debtor ... shall make a schedule of all his personal property of every kind and character,...."); *Congress Candy Co. v. Farmer*, 12 N.W.2d 796 (N.D.1944); *Murie v. Hartzell*, 225 N.W. 310, 312 (N.D.1929) ("additional exemptions allowed by law must be claimed, and, if not claimed, are deemed waived, and, hence, are generally recognized as standing on a somewhat different footing from absolute exemptions...."); *Birks v. Globe International Protective Bureau*, 218 N.W. 864 (N.D.1928); *Farmers' Bank of Mercer County v. Knife River Lumber & Grain Co.*, 163 N.W. 1053 (N.D.1917); *Dieter v. Fraine*, 20 N.D. 484, 128 N.W. 684 (1910);

*Ness v. Jones*, 10 N.D. 587, 88 N.W. 706 (1901). *See also Mees v. Ereth*, 492 N.W.2d 72 (N.D.1992). However, we need not tackle this question, since the exemptions are unavailing for other reasons.

Also, the timeliness of James's claim of exemptions may be questionable. NDCC 32–09.1–22 directs that, "[w]hen the defendant claims that the indebtedness or property, or a part thereof, is exempt from garnishment or from execution," the judgment debtor must "file a schedule of all personal property subscribed and sworn to as provided in section 28–22–07" within "twenty days after the service of the garnishee summons." Whether measured from the service of the garnishee summons upon Cass Clay as garnishee, or upon James as judgment debtor, *see* NDCC 32–09.1–08, it is clear that James did not claim exemptions within twenty days of service of the garnishee summons.

On the other hand, NDCC 28–21–12 explicitly directs that a notice of levy "must have written or printed upon its face the further notice to the debtor, that if exemptions are claimed or demanded, such claim must be made within ten days after service of notice." In this case, the notice of execution levy expressly notified James to claim exemptions within ten days when it was served on him on February 21 and, despite the efforts of the sheriff's office to nullify that opportunity, James filed his claim of exemptions within ten days. Thus, James did seek to claim a crop exemption in a timely manner after the execution levy. The problem is whether this was timely for the original garnishment seizure.

There is no statutory requirement to notify a debtor of the right to claim exemptions when the garnishee summons is served on the debtor, comparable to the requirement for an execution levy. *See* NDCC 32–09.1–07 (prescribing the form of notice to defendant that must accompany a garnishee summons). While it has been said that a judgment debtor has no duty to claim exemptions until notified of a seizure, *Bates v. Callender*, 3 Dak. 256, 16 N.W.

506 (1883), James has not complained about the lack of notice of opportunity to claim exemptions when the garnishee summons was served on him. *Compare Finberg v. Sullivan*, 634 F.2d 50 (3d Cir.1980) (Pennsylvania post-judgment garnishment procedure did not comport with due process, absent notice to judgment debtor about exemptions that might protect her property from garnishment); *Dionne v. Bouley*, 757 F.2d 1344, 1350–55 (1st Cir.1985); *McCahey v. L.P. Investors*, 774 F.2d 543 (2d Cir. 1985); *Aacen v. San Juan County Sheriff's Dep't*, 944 F.2d 691, 694–700 (10th Cir.1991); Robert Laurence, *North Dakota's New Rules Respecting Garnishment and the Property Exempt Therefrom*, 58 N.D.L.Rev. 183, 189–94 (1982). No due process question has been raised or presented here. James simply relies on his affidavit of exemptions after the execution levy that followed the Judgment of Garnishment. That claim was not timely for the garnishment.

 Whether milk is a crop for purposes of the absolute exemptions itemized in NDCC 28–22–02 has not been previously decided. NDCC 28–22–02 declares "[t]he property mentioned in this section is absolutely exempt from all process, levy, or sale," and subsection 8 lists, "[a]ll crops and grain, both threshed and unthreshed, raised by the debtor" on his homestead. While Friedt does not address this question, James refers us to the "farm products" classification of goods that the Uniform Commercial Code uses to determine rights and priorities for secured transactions. James urges that this usage gives meaning to the word "crops" for exemption purposes. Milk is a "farm product." NDCC 41–09–09(3) (UCC 9–109). The official comment explains:

> Products of crops or livestock remain farm products so long as they are in the possession of a debtor engaged in farming operations and have not been subjected to a manufacturing process. The terms "crops", "livestock" and "farming operations" are not defined; however, it is obvious from the text that "farming operations" includes raising livestock as well as crops; similarly, since eggs are products of livestock, livestock includes fowl.

Unif. Commercial Code § 9–109 cmt. 4 (part), 3 U.L.A. 272 (1992). Thus, for commercial purposes, livestock is separate from crops, though both are produced by farming operations and included in farm products. *Compare Rusk Industries, Inc. v. Hopkins County Tax Appraisal District*, 818 S.W.2d 111 (Tex.App.1991) (For tax assessment purpose, the term "crop" includes milk and beef; "crop" is a plant or animal, or product thereof, that can be grown or harvested extensively for profit or subsistence). We find no precedent that equates all "farm products" with "crops," or that defines milk as a "crop" for an absolute exemption. Even assuming that the Moseankos produced this milk solely from their homestead, we conclude that the milk produced by their dairy farming is not a "crop" that is absolutely exempt from garnishment or seizure for debt.

Even if milk were absolutely exempt as a crop, and the exemption was timely claimed, the exemption would not directly and immediately benefit James in this case. James and Deborah have expressly waived their exemptions in favor of FmHA by executing the security agreement to FmHA. *See Federal Land Bank of Saint Paul v. Gefroh*, 418 N.W.2d 602 (N.D. 1988). If Friedt's garnishment were to be defeated by James's claim of exemptions, the effect would be to transfer the right to the milk funds to FmHA, pursuant to its enforceable, though unperfected, security agreement with the Moseankos, as we ruled earlier in this opinion for Deborah's share of milk proceeds.

Friedt requests an award of attorney fees and costs for James's frivolous appeal. *See* NDRAppP 38. We refuse this request. The exemption questions were new, perplexing, and far from frivolous.

We affirm the judgment and rulings by the trial court.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICK-STAD was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to NDCC 27-17-03.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SAND-STROM, not being members of the Court when this case was heard, did not participate in this decision.