EARNEST W. SHALGREN v. RED CLIFF LUMBER COMPANY.[1]

July 14, 1905.

Nos. 14,404—(186).

**Negligence.**

Plaintiff's hand was caught in the shavings pocket of a shavings baler, and was there crushed by its advancing packer bar. The charge as to defendant's negligence was that the loose roller over which that bar passed was worn off from its cylindrical form; that thereby a plate which passed over the bar as it advanced was caused to jump up and catch and hold the plaintiff's hand while down in the pocket to adjust the board used to evenly apply the impact of the bar against the shavings. There was conflict in the evidence as to whether or not such irregular motion could have been produced by the defective or the loose roller. These facts presented a question for the jury as to the defendant's negligence. There was nothing so complicated or unintelligible about the machinery or its operation, as described and illustrated on trial, to have rendered it an abuse of discretion on the part of the trial court to have refused a view of the premises by the jury.

**Assumption of Risk.**

Where the servant complained to the master of a defective condition of machinery—in this case, of the loose roller—and the master promised to correct such defect, and directed the servant to continue his work until the repairs could be made, and the servant, in reliance upon such promise, continued to work with the defective instrumentality without harm for a period of ten days, the danger was not so great, nor the risk so imminent, as to impose upon him, as a matter of law, the assumption of the risk involved. The question of his contributory negligence was also for the jury.

**Damages.**

The damages in this case were not excessive.

[1] Reported in 104 N. W. 531.

Action in the district court for St. Louis county to recover $1,995 for personal injuries. The case was tried before Ensign, J., and a jury, which rendered a judgment in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Coryate S. Wilson,* for appellant.

*Howard T. Abbott,* for respondent.

JAGGARD, J.

This is an action for personal injuries suffered by plaintiff and respondent while operating a machine known as a "shavings baler," used for the purpose of pressing into bales shavings conveyed to it from the mill of defendant and appellant. That machine resembles the ordinary device used for pressing hay. Between the baling part and machinery part, and at about the center of the press, was an opening thirteen inches square and eighteen inches deep, known as the "pocket." Into this the shavings fell from a spout leading down from above. The open space at the bottom of the spout was the top of the shavings pocket. After the shavings passed into this pocket, a board was placed back of them, and was forced by a ram against the shavings, so as to press them into portable form. The packer bar forcing that board, at the end of its stroke against the board, was substantially parallel with the press. As it retreated its end farthest from the board passed down over a loose cylindrical roller attached to the spokes of two wheels, and the end of the bar nearest the board rose until at the end of the recovery the bar was at an angle of about forty-five degrees with the press. As the wheels proceeded in their revolution, the packer bar again rose on the loose roller to a position parallel with the press, and was pushed forward by links operated by steam so as to force the bar against the board. About the time the bar in its course forward reached the opening at the bottom of the spout down which the shavings went into the pocket, and which was at the top of the pocket, it struck a plate about five inches long, and as wide as the pocket. That plate then slid back over the bar as the bar went forward. When the bar returned, this slide fell back until it hung about right angles with the press, thus forming one end of the pocket. When the bar was forward the full length of the stroke, this slide covered up five inches of the space at the bot-

tom of the spout and at the top of the pocket. In the ordinary operation of the machine, more than eleven inches of the thirteen-inch space at the bottom of the spout and top of the pocket was filled by the plate, the width of the board, protruding shavings, and otherwise, so that, if the operator's hand should be down in the pocket as the bar advanced and pushed the slide forward, the hand would have less than two inches of space through which to be extricated before it would be caught by the advancing bar. The plaintiff was in the habit of putting his hand down into the pocket, so as to adjust the board before the packer bar struck the board, and removing his hand through this small space in time to avoid being caught and crushed by the bar, and was so doing at the time he was hurt. His hand was caught by the plate, and was crushed by the packer bar in one of its passages along its slide. The jury returned a verdict of $1,995.

1. The negligence charged consisted of a flattening of the surface of the loose roller over which the packer bar revolved. The purpose of that roller was to reduce friction in the course of the bar as it rose and fell in going forward and in coming back in its stroke, and to support the end of the bar farthest from the press. The roller was about four inches in diameter. It was worn off about one-sixteenth of an inch from its cylindrical form. The contention of the plaintiff was that this bevel caused the plate to jump and catch and imprison his hand. Ordinarily, when the machine was in perfect order, the plate moved regularly, and, according to plaintiff's testimony, did not and would not catch or hold his hand while adjusting the board in the pocket. The defendant contended that it was a physical impossibility for this condition of the loose roller to have produced the irregularity in the motion of the pocket plate complained of, or to have caused the accident. Its experts so testified. On the other hand, there was testimony on the part of the plaintiff that the jumping or irregular motion had occurred in fact a number of times before and at the time of the accident. An expert on his behalf testified that the flattening of the roller was calculated to, and naturally would, produce this effect. The analogies of the usual experiences with a flattened car wheel or grindstone serve to illustrate the principle and operation. In view of the facts as to the machinery and of this testimony, the question in physics was fairly for the jury. There is nothing in the machinery so com-

plicated as to have rendered it impossible for the jury to have understood the situation, or to have passed proper judgment on the question presented. Nor was it an abuse of discretion on the part of the trial court to have refused to permit a view of the machinery by the jury.

2. It was shown beyond controversy that the plaintiff complained to a proper representative of the master of the defective condition of the loose roller, and fully explained the situation; that the master, through his representative, promised to correct the defect, and directed the plaintiff to continue his work until a new roller should arrive; and that the plaintiff, in reliance on this promise, continued to work with the defective instrumentality for a period of ten days, when the accident occurred. The rule is familiar that under such circumstances the plaintiff had a right to rely upon the promise of the master to repair, unless the danger of his work was so great, and the probability of injury so imminent, that a man of ordinary prudence would not have continued in the employment. It is conceded that the operation by which the plaintiff was injured was repeated about two hundred times a day for each of the ten days. In the light of this fact and of the testimony as to the nature of the danger, the trial court properly declined to hold, as a matter of law, that the plaintiff assumed the risk.

3. The same reasoning exonerates the plaintiff from being guilty of contributory negligence, as a matter of law, after the promise to repair. In view of his knowledge of the abnormal danger, a greater degree of care might well have been required of him than if he had not known of the defect. Meador v. Lake Shore, 138 Ind. 290, 37 N. E. 721; Jones v. New American, 21 R. I. 125, 42 Atl. 509. And a request on the part of the defendant to the court to charge the jury to that effect would properly have been granted. It by no means follows, however, that the court should have taken the case from the jury for this reason, nor for the further reason that the plaintiff is not relieved of contributory negligence where his own acts are the moving power which causes the injury. Schlitz v. Pabst Brewing Co., 57 Minn. 303, 306, 59 N. W. 188; Bolton v. Georgia, 83 Ga. 659, 10 S. E. 352; Gorman v. Des Moines, 99 Iowa, 257, 68 N. W. 674.

The servant did not, as a matter of law, by his own negligence in the matter of using an instrumentality known to be defective, bring

injury upon himself. He was performing his work in the usual and customary way, and in a manner in which for ten days no accident had occurred. Nor was the plaintiff guilty of contributory negligence because he did his work in a dangerous way, under circumstances which permitted him to do it in a safe way, because he did not use a lever, which was near, to stop the machine, and thereby enable him to adjust the board while the machine was not in motion. There was testimony to the effect that this would have been impracticable. In order so to do, according to some testimony, it would have been necessary to have used a crowbar or hammer to make the lever perform its function. Moreover, the necessary stopping of the machine would have decreased its efficiency from one-third to one-half. In the light of all the circumstances, the court properly submitted the matter to the jury.

4. Counsel for defendant very earnestly contends that, allowing $312 for special damages, $1,683 was awarded for pain and suffering for an injury which was not clearly shown to be permanent. He cites Gahagan v. Aermotor Co., 67 Minn. 252, 69 N. W. 914, in which this court held a verdict of $1,800 excessive for an amputation of the ends of two middle fingers which had been crushed. In the present case, when the plaintiff's hand was taken out, his wrist was almost at a right angle. The right hand was cut from the point of the thumb through the fleshy portion of the hand, and across the wrist to the opposite side of the hand, and was cut or cracked open between the thumb and finger so that the flesh on the inside of the hand was loose and severed from the bone. The cords of the wrist which control the fingers were cut in two. When the plaintiff reached the doctor's office he was put under an anæsthetic. The cords, arteries, and flesh were sewed up. Plaintiff was unable to sleep for a long time on account of the consequent extreme pain. There was testimony to the effect that, despite a very skilful surgical operation, he had no or little use of his two fingers, which were without feeling and appeared to be dead. The fingers could not be straightened back, and the large finger of the right hand pulled in to the wrist at nearly right angles, and was held there by reason of the shortening of the cord, and of the attachment of the muscles to the cord or to the callous, and his whole arm and shoulder were sore and pained him on account of the injury. Prior to the accident he had been a good penman. After it, he could not

write with certainty. It was possible, and there was testimony to the effect, that the hand would never quite right itself; that the adhesions of the bruised and crushed tendons would always leave some stiffness in the hand. The learned trial judge said:

> Knowing the high character of the men who, as a jury, rendered the verdict herein, and having confidence in their ability, impartiality, and integrity, I do not feel that I have the right to interfere with their verdict.

We cannot say that, under the circumstances, he should have held the verdict to be excessive.

5. There are a number of other assignments of error, including rulings of the court at the trial, especially on the admission of evidence. After careful examination and consideration of them all, we are of opinion that the trial court properly denied defendant's motion.

Order appealed from is affirmed.