No. 26,552.

J. W. Wamberg, *Appellee,* v. Abner Hart, Sheriff, *Appellant,*
Clement L. Wilson, Interpleader, *Appellee.*

SYLLABUS BY THE COURT.

1. Actions—*Time from Which Rights Are Determined.* The ordinary rule followed that the rights of a plaintiff entitled to protection in a judgment are those which legally belonged to him at the time his action was begun.

2. Exemption—*Persons Entitled—Change of Residence.* Where chattel property exempt from execution was seized by the sheriff to satisfy a judgment, and at the time of its seizure and at the time the judgment debtor commenced his action to vindicate his exempt rights he was a resident of Kansas, the fact that during a protracted interval which followed the commencement of such action and before defendant was required to answer, the plaintiff debtor had become a nonresident of Kansas, did not deprive him of the statutory exemption to which he was entitled at the time his action was begun.

3. Same—*Tools and Instruments Necessary to Trade—Question for Trial Judge.* Whether all the debtor's office furniture was in fact the necessary tools and instruments of his business as a real-estate dealer and therefore exempt from execution was a question of fact, and the judgment of the trial court thereon based upon competent evidence is conclusive.

4. Same—*Title or Right to Support Claim.* The fact that third parties held reserved title notes to evidence their interest in certain chattels seized by the sheriff to satisfy a judgment against the maker of the notes does not prevent the judgment debtor and maker of the notes, who had possession of the chattels, from claiming that they were exempted to him against seizure and execution sale.

5. Chattel Mortgages—*Renewal Affidavit—Filing.* The circumstances under which a renewal affidavit was filed with the register of deeds to preserve a mortgage lien on chattels but thereafter inadvertently carried away and a copy left in its stead, considered, and *held,* that the chattel mortgage lien was preserved and continued in force, and was good against execution to satisfy a judgment in behalf of a third party against the mortgagor.

Appeal from Greeley district court; Roscoe H. Wilson, judge. Opinion filed June 12, 1926. Affirmed.

*W. M. Glenn,* of Tribune, for the appellant.

*Clement L. Wilson,* of Tribune, and *W. B. Washington,* of Leoti, for the appellees.

Actions, 1 C. J. p. 1149 n. 47. Appeal and Error, 4 C. J. p. 879 n. 84. Chattel Mortgages, 11 C. J. pp. 545 n. 30, 548 n. 77. Exemptions, 25 C. J. pp. 20 n. 7, 86 n. 37, 162 n. 82; 1 L. R. A. n. s. 778.

The opinion of the court was delivered by

DAWSON, J.: This is another chapter of a case which was here before. (*Wamberg v. Hart,* 114 Kan. 906, 221 Pac. 547.)

It appears that at some time prior to the commencement of this action, the plaintiff, J. W. Wamberg, a single man, conducted and maintained a real-estate office in Tribune. He had a good deal of office furniture and equipment and had a living room adjacent to or near his real-estate office. In this living room plaintiff had some chattels for housekeeping. Some of his office furniture and equipment was not paid for, and the parties who had supplied him therewith held his title notes evidencing their reserved interest in those chattels.

It also appears that most of the personal property levied on by the sheriff was covered by a chattel mortgage executed in 1921 by Wamberg to Clement L. Wilson, interpleader. Wilson sought to keep his mortgage alive by filing renewal affidavits in the office of the register of deeds, and he claimed a chattel lien on the property which the sheriff had seized and was attempting to sell when halted by an injunction issued at the inception of this action.

In his amended petition, filed June 4, 1923, plaintiff alleged ownership of the chattels seized by the sheriff and claimed that they were exempt from execution.

In defendant's answer, filed February 4, 1924, it was alleged that since the filing of this action "the plaintiff has absconded from Greeley county and from Kansas and is no longer a resident of Kansas and his whereabouts are unknown to this defendant, but the defendant is informed and believes that he now lives in the state of California."

Wilson, interpleader, filed an answer and cross petition setting up a note of plaintiff held by him, dated January 15, 1921, for $319.80, secured by a chattel mortgage covering most of the chattels levied on by the defendant sheriff. He alleged that the chattel mortgage had been recorded on January 17, 1921, and that a renewal affidavit had been filed for record on April 28, 1921, and a still later renewal affidavit had been filed for record on January 5, 1923. Copies of these renewal affidavits were attached to Wilson's cross petition. Appended to the first was the following recital:

"*Renewal Affidavit.* Filed and attached to mortgage April 28, 1921, at 8 o'clock a. m.                    FAITH OWEN, *Register of Deeds.*"

The second affidavit bore the following indorsement:

"*Chattel Mortgage.* From J. W. Wamberg to Clement L. Wilson, renewal affidavit filed and attached to mortgage Jan. 5, 1923, 11 o'clock a. m.

HOPE OWEN, *Deputy."*

Defendant's demurrer to Wilson's cross petition was overruled, and he then answered with a general denial.

Trial by the court; findings in favor of interpleader as chattel mortgagee, and in favor of plaintiff, that all the seized property was exempt except one chattel, a davenport or folding bed. Judgment was entered accordingly, and the defendant sheriff appeals.

Under various errors assigned it is first urged that plaintiff filed no reply to defendant's answer, so the allegation that plaintiff was not a resident of Kansas at the time the answer was filed must be taken as true. But subject to some exceptions not here pertinent, the rights of a plaintiff in an action at law are those to which he is entitled when his action is begun (*Reynolds v. Thomas,* 28 Kan. 810; *Robertson v. Howard,* 83 Kan. 453, 112 Pac. 162; 1 C. J. 1149), and there was no issue raised on the verified allegation of plaintiff's petition that he was then a resident of Tribune. The fact that ere this protracted litigation had progressed far enough to require defendant to file an answer, plaintiff had become a nonresident, if such was the fact, is immaterial. His rights were those which existed when his action complaining of the unlawful invasion of his exempt property was duly begun. In the early case of *Urquhart v. Smith,* 5 Kan. 447, where exempt property of a debtor had been attached, and where his motion to discharge the attachment was denied, this court said:

"It seems to us that this motion ought to have been granted. The defendant, as the testimony shows, was a resident of the state of Kansas and the head of a family at the time of the seizure of his property, and as such he was entitled to the benefit of the exemption laws, notwithstanding and independent of the fact that at some future time he might have intended to become a nonresident. Such intention might never have been carried into effect; and until it was, he was, and would be, fully within the protection of the laws referred to. It is provided in the exemption act that no exempted property shall be liable to seizure and sale upon any attachment, execution or other process issued from any court in this state; and it scarcely needs to be stated that it is incumbent on the courts of the state to give force to these provisions whenever properly and lawfully called upon so to do. If, then, any such exempted property was taken on the attachment in this case, it was the duty of the justice to have ordered the release of the same so soon as the fact was brought to his knowledge and lawful demand thereof made by the owner. This, we think, was accomplished by the motion of the defend-

ant and the evidence which had been submitted." (p. 451. See, also, *Bank v. Sesler,* 113 Kan. 656, 216 Pac. 274; 25 C. J. 19.)

It is next argued that plaintiff was not entitled to exemption on all his office furniture. Defendant argues that plaintiff's business, which was that of a real-estate dealer, was negligible, that he had no real need for a duplicating machine, a check writer, an envelope sealer, an addressing machine, a filing cabinet, nor for two type-writers and two or three desks. The statute says:

"The following property only shall be exempt from attachment and execution, when owned by any person residing in this state, other than the head of a family: . . . third, the necessary tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade or business, and, in addition thereto, stock in trade, as provided in the last preceding section; fourth, the library, implements, and office furniture of any professional man." (R. S. 60-3505.)

It was a fair question for the district court, as trier of the issues of fact, to determine whether all the chattels, especially the duplicates, were necessary tools and instruments in plaintiff's business as a real-estate dealer. This court cannot say that there was no evidence to support the trial court's determination of this disputed issue of fact, so the judgment on this point will have to stand.

Defendant criticizes the attention given by the trial court to the facts pleaded by plaintiff concerning the claims of the unpaid vendors of the office furniture under their reserved title notes. It is argued that plaintiff has to establish his cause by the strength of his own title, and that contention is correct. Perhaps the fact that third parties held an interest in those chattels as evidenced by these notes was given unnecessary consideration. But until those chattels were seized by the sheriff, plaintiff had possession of them, and possession itself has a certain quality of title, good against everybody except those having a better claim thereto (I Cooley's Blackstone, 3d ed., 401; 2 Kent, 14th ed., 500, 560) ; and Wamberg could protect his right—such as it was—against unlawful invasion by the defendant.

Passing next to that phase of the judgment which dealt with the rights of the chattel mortgagee, defendant makes this concession and contention:

"The chattel mortgage was perfectly good when it was filed on January 17, 1921, and it would be perfectly good against all creditors or purchasers until January 17, 1923. And then the lien would immediately cease, except as to the mortgagor, unless renewed as the statute requires."

Defendant then proceeds to argue that the renewal affidavit filed

on April 28, 1921, was without legal significance, because the note secured thereby was then only thirteen days overdue, whereas the statute merely says that a mortgage shall be void unless a proper renewal affidavit is filed *within thirty days next preceding the expiration of the term of two years* after maturity. The statute reads:

"Every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of two years after the filing thereof, unless, within thirty days next preceding the expiration of the term of two years from such filing, and each two years thereafter, the mortgagee, his agent or attorney, shall make an affidavit exhibiting the interest of the mortgagee in the property at the time last aforesaid, claimed by virtue of such mortgage, and, if said mortgage is to secure the payment of money, the amount yet due and unpaid. Such affidavit shall be attached to and filed with the instrument or copy on file to which it relates." (R. S. 58-303.)

It would therefore appear that no legal significance can be attached to the filing of the renewal affidavit on April 28, 1921, and this conclusion accords with the rule stated in 11 C. J. 545-546, where it is said:

"The time within which a chattel mortgage must be refiled or renewed is fixed by the statutory provision requiring such refiling or renewal. Such provisions must be strictly complied with. Where a certain period, such as thirty days, is given within which to refile a mortgage, any effort to renew the record before the period commences is ineffectual."

But what about the renewal affidavit of January 5, 1923? The note secured by Wilson's chattel mortgage was dated January 15, 1921, and was due on April 15, 1921. The chattel mortgage was duly filed for record on January 17, 1921, and it continued to be valid and enforceable for two years thereafter without any renewal affidavit being filed. The interpleader's second renewal affidavit was filed on January 5, 1923, which was *"within thirty days next preceding the expiration of the term of two years from such filing"* of January 17, 1921. This renewal affidavit was timely made and filed, and it preserved and continued the validity of the chattel mortgage covering the chattels against seizure by the sheriff on January 19, 1923, unless it was vitiated by the following incident: It was pleaded and well supported by evidence that the chattel mortgagee, according to his custom in handling renewal affidavits of chattel mortgages held by him, caused his stenographer to prepare a renewal affidavit in duplicate—one original for filing and the other for use as an office copy—and he executed one of these before a notary, and his stenographer took them both to the register of deeds.

Barber County Comm'rs v. Lake State Bank.

That officer made the usual filing indorsement, quoted above, on both papers, and one was left with the register of deeds and the other carried back to the business office of the mortgagee. Inadvertently it was the original which the stenographer carried away, and it was the office copy which was left with the register and attached to the chattel mortgage; and not until some time in February, a few days after the chattels were seized by the sheriff, was the transposition of the copy for the original affidavit discovered. Should that incident suffice to defeat the rights of the chattel mortgagee? We think not. The original affidavit was in fact duly filed. It was indorsed by the register of deeds as being duly filed and attached to the mortgage on January 5, 1923. The fact that afterwards it was inadvertently transposed for the mortgagee's office copy did not vitiate the actual filing. No one was wronged or misled by the transposition. The copy itself was a virtual duplicate. It, too, bore the register's indorsement. It gave fair warning to all concerned that the chattel mortgagee had invoked his statutory privilege to preserve and continue his lien on the chattels as security for the debt due him. The trial court did not err in holding that the interpleader's mortgage lien held precedence over the levy by the sheriff.

There is no error in this record of sufficient gravity to justify a reversal of the judgment, and the judgment is therefore affirmed.