ROBERT MURIE, Trustee in Bankruptcy for L. T. Hartzell, Bank-
rupt, Respondent, v. L. T. HARTZELL, et al., and E. T. BAS-
COM, Appellant.

(225 N. W. 310.)

Opinion filed May 3, 1929.

*Thomas Devaney,* for appellant.

*Snowfield & Stewart,* for respondent.

CHRISTIANSON, J. The plaintiff, as trustee in bankruptcy of L. T. Hartzell, a bankrupt, brought this action to set aside an alleged fraudulent transfer by the bankrupt Hartzell to the defendant Bascom. There was a judgment in favor of the plaintiff and the defendant, Bascom, appeals and demands a trial anew in this court.

The facts out of which this litigation grew are substantially as follows: The defendant L. T. Hartzell is a farmer. In December, 1925, and January, 1926, he was residing on a farm near Langdon in this state, where he had resided for many years. He was a married man, having a family consisting of his wife and seven minor children. In the fall of 1925 he was in financial straits; the mortgages upon his farm had been foreclosed; the time for redemption was nearly up; most of his personal property was mortgaged to the receiver of the Cavalier County National Bank and to the First National Bank of Langdon. The defendant Bascom is Hartzell's brother-in-law. Bascom is an attorney-at-law practicing at Monroe, Washington. The receiver of the Cavalier County National Bank had communicated with Bascom regarding Hartzell and his affairs and as a result Bascom came to Langdon, arriving there December 26, 1925. Shortly after his arrival he consulted with some of the principal creditors of Hartzell. Later he obtained an abstract of the mortgages against, and made an inventory of, Hartzell's personal property. Some discussion was had between Bascom and Hartzell and his wife regarding Hartzell's affairs; and, according to the testimony of all three, Bascom made an offer to buy all of Hartzell's personal property and to pay him therefor $500 in cash and defray the traveling expenses of Hartzell's family from Langdon, North Dakota to Monroe, Washington, and further to defray the traveling expenses for their return from Monroe, Washington, to Langdon, North Dakota, if they desired to return to the latter place. Hartzell and Bascom thereupon consulted Mr. Devaney, an attorney-at-law

practicing in Langdon, as to whether Hartzell might lawfully sell his personal property to Bascom; and Devaney advised that inasmuch as Hartzell had no property in excess of that which he might claim as exempt, against his creditors, there was no reason why Hartzell might not lawfully dispose of such property to Bascom. Following this conversation a bill of sale was prepared by Devaney and executed by Hartzell, whereby Hartzell sold and transferred certain personal property therein described to Bascom. Thereupon Bascom and the receiver of the Cavalier County National Bank proceeded to advertise a public sale of all Hartzell's property. A copy of the notice of sale is in evidence. It is a large placard. The names of the defendant Bascom and the receiver of the Cavalier County National Bank are appended thereto as the persons holding the sale. The sale bill is entitled "Combination Sale" and recites that the sale will be held "on the L. T. Hartzell farm, six miles south and four miles west of Langdon" on Wednesday, January 6, at one o'clock P. M. The undisputed evidence shows that copies of this notice of sale were distributed generally throughout the vicinity of Langdon, one bill being placed in each rural mail delivery box on the rural delivery routes of that city; also that notice of sale was published in a newspaper published in the city of Langdon. According to the evidence the sale was well attended and it appears that the creditors of Hartzell who are primarily interested in the present action were present and participated in the sale. The plaintiff Murie was present and purchased at the sale some property that he had sold to Hartzell and on which he held a chattel mortgage. Other creditors appeared and purchased at the sale. Bain, the president of the First National Bank of Langdon, was named on the notice of sale as clerk of the sale; and, according to the evidence he clerked that part of the sale which involved the property transferred to Bascom and as proceeds of such sale he had in his hands at the conclusion thereof, $403.74 in cash and promissory notes aggregating $267. After the sale had been completed Hartzell executed and delivered to Bascom an assignment of all interest in the proceeds of the sale. According to the testimony of both Hartzell and Bascom, this was done because the bill of sale from Hartzell to Bascom did not include all the property which Hartzell had sold to Bascom but certain portions had been omitted through oversight. On January 8, 1926,

Hartzell signed and verified a petition in voluntary bankruptcy and on January 11, 1926, he was adjudged a bankrupt pursuant to such petition by the district court of the United States for the district of North Dakota. The plaintiff Murie was appointed trustee in bankruptcy on January 29, 1926. According to the testimony of both Bascom and Hartzell, Bascom paid Hartzell as consideration for the property $500 in cash and agreed to and did pay the expenses incident to the transportation of Hartzell's family from Langdon to Monroe, Washington, which expenses aggregated to exceed $300 more; and further agreed to defray the traveling expenses of Hartzell's family back to Langdon, if they desired to return.

After careful consideration of all the evidence we have reached the conclusion that the judgment appealed from is erroneous and must be reversed. The action is predicated on the proposition that Hartzell transferred the property to Bascom with intent to delay or defraud his creditors of their demands against Hartzell in contravention of § 7220, Comp. Laws 1913; and that, consequently, the trustee of the estate of the bankrupt is entitled to avoid the transfer.

So far as material here, § 7220, supra, reads as follows:

"Every transfer of property . . . with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor."

Sections 7222 and 7223, Comp. Laws 1913 read as follows:

Section 7222. "A creditor can avoid the act or obligation of his debtor for fraud only when the fraud obstructs the enforcement by legal process of his right to take the property affected by the transfer or obligation."

Section 7223. "In all cases arising under . . . the provisions of this chapter the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

These statutory provisions were construed by this court in Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245, and Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529. Both cases held fraudulent intent to be the great essential to render a transfer fraudulent. In Stevens v. Meyers, supra, the court said: "It will be noted that §

5052 (Comp. Laws 1913, § 7220) makes the fraudulent intent the vital fact which renders the conveyance void, and § 5055 (Comp. Laws 1913, § 7223) declares that 'the question of fraudulent intent is one of fact and not of law,' and the latter section goes further, and provides that no transfer shall be adjudged fraudulent solely upon the ground that it was not made for a valuable consideration. This statute will not permit us to hold that a fraudulent intent will be conclusively presumed as a matter of law from the fact that a conveyance was made without consideration, and by one who was at the time insolvent; for such a holding assumes that under such circumstances the question of intent is one of law, and not of fact, and is directly in the teeth of the statute. The question of intent is always one of fact. It must be alleged, proved and found in order to avoid the transfer. . . . The fraudulent intent is the ultimate fact in issue." 14 N. D. pp. 402, 403, 104 N. W. 531.

The plaintiff trustee had the burden of proof. He had the burden of proving that the transfer in question here was made with intent to delay or defraud Hartzell's creditors. 2 Collier, Bankr. 13th ed. p. 1783. As we view the evidence this burden has not been sustained. A debtor commits a fraud on creditors only by disposing of such property as the creditor has a legal right to look to for satisfaction of his claim and, hence, a sale or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in fraud of their rights. 27 C. J. p. 438; McKillip v. Farmers' State Bank, 29 N. D. 541, 151 N. W. 287, Ann. Cas. 1917C, 993; Kvello v. Taylor, 5 N. D. 76, 63 N. W. 889. See Re National Grocer Co. 30 L.R.A.(N.S.) 982, 104 C. C. A. 47, 181 Fed. 33.

While the property in question here was not absolutely exempt; it was, nevertheless, property which Hartzell himself, or in case he neglected or refused to do so, then his wife or a child sixteen years of age or over, and a member of his family, might have claimed as exempt from levy and sale under attachment or execution. Comp. Laws 1913, § 7736; Supp. 1925, § 7731. It is true the additional exemptions allowed by law must be claimed, and if not claimed are deemed waived, and, hence, are generally recognized as standing on a somewhat different footing from absolute exemptions as regards their being the subject

of a fraudulent conveyance; yet the fact that such property is not available for the satisfaction of the claims of creditors unless the debtor, his wife and children over the age of sixteen years, who are members of the family, are willing to make the property available for the satisfaction of such claims, by waiving the right to claim the property as exempt, is obviously of great importance in determining whether a debtor in disposing of such property did so with an intent to delay or defraud his creditors.

In determining whether a particular transfer is fraudulent the circumstances of each case must govern and it is difficult, if not impossible, to lay down any fixed rule which will govern in all cases. 7 C. J. p. 172. In this case it is evident that Hartzell was about to lose all of his personal property by foreclosure of the mortgages held thereon by the receiver of the Cavalier County National Bank. There was no way he could save his farm from passing into the hands of others under the foreclosure proceedings which had been had. The receiver of the Cavalier County National Bank, apparently without any suggestion on the part of Hartzell, had communicated with Hartzell's brother-in-law regarding Hartzell's affairs. The brother-in-law came a long distance to investigate Hartzell's affairs and see what could be done in his behalf and in behalf of his family. After viewing the situation and conferring with a number of Hartzell's creditors it was determined there was no chance for Hartzell to continue the operation of the farm. The receiver was about to hold a sale and the brother-in-law, Bascom, determined to purchase all of Hartzell's personal property and to join with the receiver in holding the sale. That Bascom paid Hartzell some money at or about the time the personal property was transferred cannot be denied. There is not the slightest doubt that Hartzell was in very sore financial straits. One of the witnesses for the plaintiff (an officer of the First National Bank of Langdon) testified that he prepared a Christmas box for the Hartzell family. It is undisputed that Hartzell did not receive one penny out of the proceeds of the public sale. It is equally certain that after he transferred the property to Bascom he had some funds, and the only reasonable inference is that any money he or his family had must have been received from Bascom. There is no question but that Bascom paid the travelling expenses of Mrs. Hartzell and the children from Langdon to Monroe, Washington.

The rights of the parties must, of course, be determined as of the time of the transaction that is challenged (Wamberg v. Hart, 121 Kan. 218, 246 Pac. 1010); and we are wholly agreed that under the evidence there can be no doubt but that if at the time Hartzell transferred the property to Bascom some creditor had attached or if some judgment creditor had caused execution to be levied upon such property, Hartzell, or in event of his failure to do so, his wife could have claimed all the property transferred to Bascom as exempt. In these circumstances it is difficult to see where there is any basis for a finding that the transfer was made with intent to defraud or delay creditors, as such creditors could not have satisfied their claims out of the property unless Hartzell and his wife had been willing that they should do so. There was on concealment of the transaction had between Bascom and Hartzell. The bill of sale was filed for record in the office of the register of deeds on December 30, 1925,—the day after it was executed. The sale was publicly advertised and the principal creditors were present at the sale.

There seems to be some contention on the part of the plaintiff that Hartzell had ceased to be a resident of the state or was in the act of removing with his family from the state and hence was not entitled to exemptions, other than absolute, under § 7742, Comp. Laws 1913. The contention is not well founded. The mere intention of Hartzell and his family to remove from the state did not affect his right to claim exemptions. 25 C. J. p. 20; 11 R. C. L. p. 542. See also Wamberg v. Hart, supra; note in 1 L.R.A.(N.S.) 778. It was only after he had become a non-resident or was "in the act of removing with his family from the state" that his right to claim additional exemptions ceased to exist. No such situation existed at the time the bill of sale was given or the assignment of the proceeds of the sale was made. According to the evidence there was no definite intention on the part of Hartzell and his family to leave the state of North Dakota; it was their intention rather to go to Washington and look conditions over, and then determine whether they would remain there or come back to this state.

It is indeed difficult to understand how plaintiff can be heard to say that Hartzell did not reside, or have his domicile, within this state at the time of the transfer. The plaintiff brings suit as trustee in bank-

ruptcy. The petition in the bankruptcy proceeding in which he was appointed trustee was verified on January 8, 1926, and the adjudication was had thereon on January 11, 1926. This petition alleged that Hartzell had resided at Langdon, North Dakota, for the greater portion of the six months *next immediately preceding* the filing of the petition." If Hartzell was not a resident of or domiciled within North Dakota on January 11, 1926 then the bankruptcy court would have been without jurisdiction to make the adjudication in bankruptcy. 1 Collier, Bankr. 13th ed. pp. 56, et seq., 1 Remington, Bankr. 3d ed. §§ 34–36.

"To determine whether a court of bankruptcy may enter a petition to adjudicate the bankruptcy of a debtor it must appear that he either, (1) had his principal place of business within the district; (2) or resided therein; (3) or had a domicile therein; and it must also appear that such place of business had been maintained, or such residence or domicile had been had, within such jurisdiction for the greater portion of the six months prior to the time when the petition for an adjudication of bankruptcy has been presented to the court. . . . The existence of these requirements is jurisdictional. . . ." 1 Collier, Bankr. 3d ed. pp. 56, 57.

"No one may be adjudged bankrupt, upon his own petition or upon the petition of another, by his own consent or contrary thereto, except by the bankruptcy court of the district where he had had either his residence, domicile or principal place of business for the six months or greater portion thereof preceding the filing of the petition. . . . These limitations as to residence, domicile and principal place of business are jurisdictional, pertaining to the jurisdiction over the subject matter; and they cannot be waived." 1 Remington, Bankr. 3d ed. § 36.

Obviously the trustee cannot be heard to deny the existence of the jurisdictional facts upon which the adjudication in bankruptcy was predicated.

It follows from what has been said that the judgment appealed from must be reversed and the action dismissed. It is so ordered.

BURKE, Ch. J., and BIRDZELL, BURR, and NUESSLE, JJ., concur.