Lawrence and Jacqueline MEES,
Plaintiffs and Appellees,

v.

Eleanor and Kenneth ERETH,
Defendants and
Appellants.

Civ. No. 920081.

Supreme Court of North Dakota.

Nov. 5, 1992.

Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiffs and appellees Lawrence and Jacqueline Mees; argued by Timothy J. Austin, Mandan.

Rolfson Schulz Lervick Law Offices, Bismarck, for plaintiff and appellee Burleigh County Sheriff's Dept.; argued by Timothy D. Lervick, Bismarck.

Wheeler Wolf, Bismarck, for defendants and appellants; argued by Jack McDonald, Jr., Bismarck.

Rebecca S. Thiem and James S. Hill, of Zuger, Kirmis, Bolinske & Smith, Bismarck, amicus curiae brief. Submitted on brief.

LEVINE, Justice.

Eleanor and Kenneth Ereth appeal from an order denying some of their claimed property exemptions from execution and levy, and denying their request for costs on a prior appeal. We hold that the trial court correctly ruled that the Ereths' bank accounts and Kenneth's Individual Retirement Account (IRA) are not "absolutely exempt" from execution levy and cannot be claimed as exemptions by the Ereths. We further hold, however, that the Ereths are entitled to their costs on the prior appeal. We affirm in part, reverse in part, and remand with directions that the trial court amend its order to include an award of costs for the Ereths on their prior appeal.

The undisputed factual history of this case is explained in two prior related appeals before this court, *Mees v. Ereth,* 466 N.W.2d 135 (N.D.1991), and *Mees v. Ereth,* 462 N.W.2d 161 (N.D.1990). Those facts will not be repeated here, except where necessary for an understanding of the issues raised on this appeal.

The Meeses obtained a money judgment against the Ereths for selling the Meeses a daycare business, using fraudulent statements and data. After obtaining the judgment, the Meeses requested the sheriff to

levy upon the Ereths' funds at Norwest Bank, including various bank accounts and an IRA. The Ereths then filed a timely claim of exemptions, asserting that this property was statutorily exempt from execution levy, the bank accounts under Section 28–22–03, N.D.C.C.,[1] and the IRA under Section 28–22–03.1, N.D.C.C.[2] The Meeses assert that because their judgment is based upon the Ereths' fraudulent conduct, the Ereths, under Section 28–22–15, N.D.C.C., are entitled to claim only "absolute exemptions." They further assert that the Ereths' bank accounts and IRA are not exempt from execution levy because only those exemptions listed under Section 28–22–02, N.D.C.C.,[3] are absolute exemptions. The trial court agreed with the Meeses and issued an order denying the Ereths' claim of exemptions for these properties.

Section 28–22–15, N.D.C.C., states in relevant part:

**1.** Section 28–22–03, N.D.C.C., provides:

"In addition to the absolute exemptions mentioned in section 28–22–02, except in subsection 8 thereof, the head of a family, personally or by his agent, may select from his other personal property, any goods, chattels, merchandise, money, and other personal property not exceeding in value the sum of five thousand dollars, which also is exempt from all attachment or mesne process, levy and sale upon execution, and any other final process issued from any court."

**2.** Section 28–22–03.1, N.D.C.C., provides in relevant part:

"In addition to the exemptions from all attachment or process, levy and sale upon execution, and any other final process issued from any court, otherwise provided by law, a resident of the state may select:

\*   \*   \*   \*   \*   \*

"3. Pensions, annuity policies or plans, and life insurance policies which, upon the death of the insured, would be payable to the spouse, children, or any relative of the insured dependent, or likely to be dependent, upon the insured for support and which have been in effect for a period of at least one year; individual retirement accounts; Keogh plans and simplified employee pension plans ... up to one hundred thousand dollars for each pension, policy, plan, and account with an aggregate limitation of two hundred thousand dollars for all pensions, policies, plans, and accounts...."

**3.** Section 28–22–02, N.D.C.C., provides:

"Only absolute exemptions may be allowed against process:

\*   \*   \*   \*   \*   \*

"2. Upon a debt incurred for property obtained under false pretenses...."

The Ereths concede that this provision applies to them because the Meeses' judgment is based upon the Ereths' fraud. However, the Ereths assert that the property listed under Sections 28–22–03 and 28–22–03.1, N.D.C.C., are "absolute exemptions" which, together with the absolute exemptions listed under Section 28–22–02, N.D.C.C., can be claimed by them.

■ The genesis of our present scheme of exemptions is the territorial statutes. *Jangula v. Bobb*, 55 N.D. 279, 213 N.W. 27 (1927). Section 28–22–15, N.D.C.C., was first enacted in 1877 as several separate sections that have since been consolidated [C.Civ.P. 1877, §§ 332 to 334]. From its

"The property mentioned in this section is absolutely exempt from all process, levy, or sale:
    "1. All family pictures.
    "2. A pew or other sitting in any house of worship.
    "3. A lot or lots in any burial ground.
    "4. The family Bible and all schoolbooks used by the family and all other books used as a part of the family library not exceeding in value one hundred dollars.
    "5. All wearing apparel and clothing of the debtor and his family.
    "6. The provisions for the debtor and the debtor's family necessary for one year's supply, either provided or growing, or both, and fuel necessary for one year.
    "7. The homestead as created, defined, and limited by law.
    "8. All crops and grain, both threshed and unthreshed, raised by the debtor on not to exceed one hundred sixty acres [64.75 hectares] of land in one tract occupied by the debtor, either as owner or tenant, as the debtor's home, but the provisions of this subsection in no way affect seed, thresher, or landlord liens, and if the debtor takes advantage of this subsection the debtor may not take any additional alternative exemptions provided under this chapter.
    "9. All insurance benefits resulting from insurance covering any or all of the absolute exemptions.
    "10. Any housetrailer or mobile home occupied as a residence by the debtor or the debtor's family, except that it is not exempt from process, levy, or sale for taxes levied on it pursuant to chapter 57–55."

first enactment, this statute has permitted only absolute exemptions for debtors whose debt was incurred for property obtained under false pretenses.

Section 28–22–02, N.D.C.C., first enacted in 1877 [C.Civ.P. 1877, § 323], described seven items of property, including the homestead, which were expressly made "absolutely exempt" from all process, levy, or sale. That statute currently describes ten items of property that are absolutely exempt from process.

Section 28–22–03, N.D.C.C., the statute under which the Ereths' claim their bank accounts are exempt, was also first enacted in 1877 [C.Civ.P. 1877 § 324]. That provision currently lists additional exemptions which "the head of a family ... may select." The first enactment of this statute made these exemptions available to a debtor irrespective of whether the debtor was the head of a family, but it has always required the debtor to "select" or claim these exemptions. The maximum value of the items that may be exempted under this provision is currently $5,000.

Section 28–22–03.1, N.D.C.C., the statute under which the Ereths' claim that Kenneth's IRA is exempt, was not enacted until 1981. [1981 N.D.Sess.Laws, Ch. 335]. It lists additional exemptions that "a resident of the state may select," including IRA's, with specified dollar limitations.

The Meeses argue that only "absolute exemptions" are available for a debtor whose debt was incurred for property obtained under false pretenses and that all those absolute exemptions are listed in Section 28–22–02, N.D.C.C. We agree.

Prior cases construing our statutory scheme of exemptions make it clear that Section 28–22–02, N.D.C.C., is the exclusive repository for absolute exemptions. Exemptions provided under the other statutory sections of Title 28, N.D.C.C., including Sections 28–22–03 and 28–22–03.1, N.D.C.C., are additional exemptions which are not absolute because they are nowhere described as "absolute" in the statutes, and, indeed, are waived if not selected or claimed as exemptions by the debtor.

In determining which exemptions were available to a judgment debtor who had obtained property under false pretenses, this court in *Taylor v. Rice*, 1 N.D. 72, 44 N.W. 1017 (1890), stated that "absolute exemptions" were defined by Section 5127 of the Compiled Laws of 1887, which is currently codified as Section 28–22–02, N.D.C.C.

In *Dieter v. Fraine*, 20 N.D. 484, 128 N.W. 684, 686–687 (1910), this court explained the difference between "absolute exemptions," under what is now codified as Section 28–22–02, N.D.C.C., and "additional exemptions," under what is currently codified as Section 28–22–03, N.D.C.C.:

"Respondent contends, and the trial court held, that no homestead exemption existed in the case at bar by reason of the fact that it was not claimed by the husband who was to be regarded as the sole head of the family.

\*    \*    \*    \*    \*    \*

[T]here is a clear and broad distinction to be drawn between those exemptions classified as absolute and those termed 'additional' or 'special alternative' by the statute.... The absolute exemptions are without any condition or incumbrance. They are unmixed and unconnected with any peculiarity or qualification; complete and perfect in themselves. Not so with the other two. The statute provides: "In addition to the property mentioned, \* \* \* the debtor may, by himself or his agent, select \* \* \*." ... This relates to the additional exemptions. The special alternative exemptions may be substituted for the additional, but the debtor must select and choose the property he wishes to be excepted. In the case of absolute exemptions there can be no doubt but they are at all times, and under all circumstances, not subject to the lien of a judgment, or levy and sale under execution, except such execution was issued for the purchase money of said property.... A levy does not constitute a lien upon such property, and a sale thereof does not operate to convey to the purchaser any interest whatever."

*See also, Murie v. Hartzell,* 58 N.D. 200, 225 N.W. 310 (1929) ("It is true the additional exemptions allowed by law must be claimed, and, if not claimed, are deemed waived, and, hence, are generally recognized as standing on a somewhat different footing from absolute exemptions as regards their being the subject of a fraudulent conveyance"). These cases carefully demarcate the difference between the unconditional nature of absolute exemptions and the contingent nature of the additional exemptions which a debtor must select.

Another distinction between absolute and additional exemptions was explained in *Dakota National Bank of Fargo v. Salzwedel,* 71 N.D. 643, 3 N.W.2d 468 (1942). In that case, this court concluded that the absolute exemptions found under Section 7730 of the Compiled Laws of 1913, a prior codification of Section 28–22–02, N.D.C.C., are not dependent upon quantity or value and need not be appraised, but that the additional exemptions found under Section 7731 of the Compiled Laws of 1913, a prior codification of Section 28–22–03, N.D.C.C., must be selected by the debtor and must be appraised.

These cases demonstrate that, since territorial days, the Legislature has placed all absolute exemptions under what is now codified as Section 28–22–02, N.D.C.C. The language used to create the distinction is clear and unambiguous. Exemptions under Section 28–22–02, N.D.C.C., are "absolutely exempt," but "additional" exemptions, including those currently listed under Sections 28–22–03 and 28–22–03.1, N.D.C.C., the debtor must "select."

The Ereths argue that the exemptions under both Sections 28–22–03 and 28–22–03.1, N.D.C.C., should be considered absolute exemptions, because the 1985 Legislature amended the headnotes to those sections, inserting the words "additional absolute exemption[s]." *See* 1985 N.D.Sess. Laws, Ch. 349.

The text of Section 28–22–02, N.D.C.C., expressly makes the exemptions thereunder "absolute." To the contrary, the text of Sections 28–22–03 and 28–22–03.1,

N.D.C.C., make those exemptions "additional" exemptions that must be selected or they are waived. This statutory language creates a clear distinction between absolute exemptions under Section 28–22–02, N.D.C.C., and additional exemptions under Sections 28–22–03 and 28–22–03.1, N.D.C.C. Consequently, there is no need to construe these statutes nor to resort to the rules of construction for that purpose. Furthermore, Section 1–02–12, N.D.C.C., expressly provides that "[a] headnote may not be used to determine legislative intent or the legislative history for any statute."

Because the amended headnotes contradict the text of these statutes, creating substantial confusion, we shall briefly review the legislative history of the 1985 amendments and explain the contradiction between the headnotes and the text of these exemption statutes. In 1981, the Legislature enacted Section 28–22–17, N.D.C.C., providing that North Dakota residents are not entitled to federal bankruptcy exemptions but are limited to the exemptions provided by state law. 1981 N.D.Sess.Laws, Ch. 335. Chapter 335 also created Section 28–22–03.1, N.D.C.C., providing additional property exemptions that could be claimed by a state resident. An attorney general's opinion issued in 1984 concluded that the new exemptions, created under Section 28–22–03.1, N.D.C.C., were available only to bankruptcy debtors.

In response to the attorney general's opinion, the 1985 Legislature amended Sections 28–22–03 and 28–22–03.1, N.D.C.C., by inserting into the headnotes of those statutes the term "absolute." The headnote to Section 28–22–03, N.D.C.C., now reads, "[a]dditional absolute exemption for head of a family," and the headnote to Section 28–22–03.1, N.D.C.C., now reads, "[a]dditional absolute exemptions for residents." Testimony before the House Finance and Taxation Committee indicates that the Legislature's sole purpose in amending the titles was to clarify that the exemptions under those sections applied to nonbankruptcy debtors as well as to bank-

ruptcy debtors.[4]  There is no indication in the legislative history of the 1985 amendments that the Legislature intended to expand the category of property that is absolutely exempt without debtor selection.[5]

For more than 100 years all absolutely exempt property has been listed under Section 28–22–02, N.D.C.C., and its predecessor statutes.  The amendment of the titles to Sections 28–22–03 and 28–22–03.1, N.D.C.C., without a corresponding change in their text, is not a reasonable basis for concluding that the Legislature intended to change the 100–year old scheme of absolute and additional exemptions.[6]  Consequently, we hold that the trial court did not err in denying the Ereths' claims for exemption of their Norwest bank accounts and Kenneth's IRA.

■ The Ereths also assert that the trial court erred in refusing to award them costs and disbursements for their prior appeal.  *See Mees v. Ereth,* 466 N.W.2d 135 (N.D. 1991).  The judgment filed by this court in that appeal expressly states:

> "It is further ordered and adjudged that [Eleanor and Kenneth Ereth] have and recover from Appellees costs and disbursements on this appeal, to be taxed and allowed in the court below."

On this appeal, the Meeses have not given any reasons justifying the trial court's refusal to award the Ereths their costs and disbursements on that prior appeal.  We conclude, therefore, that the trial court's refusal constituted an abuse of discretion.  We reverse that part of the court's order denying the Ereths' request for costs and disbursements on the prior appeal and we remand with directions that the court amend its order to include an appropriate award of costs and disbursements for that

appeal.  We further direct that the parties be held responsible for their own costs on this appeal, as described under Rule 39(e), N.D.R.App.P.

The order of the court is affirmed in part, reversed in part, and remanded.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and JOHNSON, JJ., concur.

---

4.  Duane Houdek, attorney with Legal Assistance of North Dakota, testified before the House Finance and Taxation Committee:

> "This legislation is necessary to correct the interpretation of section 28–22–03.1, NDCC, made by the Attorney General's office in an opinion dated March 30, 1984, which stated that these exemptions were available only to bankruptcy debtors."

5.  Consistent with this analysis is Section 14–05–25.1, N.D.C.C., enacted in 1985, dealing with

property distribution in a divorce action: "A party may also execute on a money judgment, and the obligor is entitled only to the absolute exemptions from process set forth in section 28–22–02."

6.  To eliminate the potential confusion, the Legislature should correct its 1985 amendments to the headnotes of Sections 28–22–03 and 28–22–03.1, N.D.C.C.